**Martha Jo MAHAFFEY, Plaintiff/Appellant,**

v.

**William Raymond MAHAFFEY, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 12, 1989.

Permission to Appeal Denied by Supreme Court July 31, 1989.

Knox Bingham, Bingham & Boyd, Lewisburg, for plaintiff-appellant.

R. Whitney Stevens, Jr., Stevens, Bagley & Stevens, Fayetteville, for defendant-appellee.

## OPINION

KOCH, Judge.

This appeal concerns the property division aspects of a divorce decree. Both parties requested the Circuit Court for Lincoln County to dissolve their sixteen-year marriage. The trial court granted the wife a divorce and divided the marital property. The wife has appealed, insisting that the trial court erred by including the appreciation in the value of her inherited property as part of the marital estate. We disagree and, therefore, affirm the trial court.

### I.

Martha Jo Cook and William Raymond Mahaffey were married in June, 1961. Mr. Mahaffey is a consulting physicist. Mrs. Mahaffey occasionally taught school but spent most of her time during the marriage as a homemaker. Their two sons, who are now over eighteen years old, play no role in this case.

The Mahaffeys' marital problems seem to stem from Mrs. Mahaffey's attitude about some real property she inherited from her father. Throughout the marriage, she insisted on keeping the property in her own name and was consistently reluctant to use the income from the property for routine family expenses. However, from 1978 to 1984, she permitted Mr. Mahaffey to both improve and farm the property, and the parties used the property to

secure sizeable loans for the farming operations. Unfortunately, several years of bad weather ultimately brought an end to Mr. Mahaffey's farming.

Mrs. Mahaffey initially declined to use any of her resources to reduce the farm debts. She declined to sell any of the property and told Mr. Mahaffey that he should pay the farm debts since he was responsible for them. The strain of the debts took its toll. The parties had violent arguments, and Mrs. Mahaffey even accused Mr. Mahaffey of being an alcoholic. They separated in May, 1985 after a particularly unpleasant confrontation in front of Mr. Mahaffey's mother. Mr. Mahaffey remained in the Fayetteville house, and Mrs. Mahaffey moved in with her mother.

Both parties sought a divorce on the grounds of cruel and inhuman treatment. The trial court heard the proof in September, 1987 and granted the divorce to Mrs. Mahaffey. The parties' primary disagreement at trial concerned the status of four tracts of real property. The trial court determined that the appreciation in the value of the real property should be treated as marital property because Mr. Mahaffey had contributed to its preservation and appreciation.

## II.

Mrs. Mahaffey is the only child of James B. and Martha Cook. Mr. Cook died intestate in June, 1959. The bulk of his estate consisted of farm land in Madison County, Alabama. Mr. Cook held title to most of the land in his own name except for approximately seventy acres which he held jointly with his wife.

Under Alabama law, all of Mr. Cook's property descended to Mrs. Mahaffey subject to her mother's dower interest. Mrs. Mahaffey's mother was named administratrix of Mr. Cook's estate, and the estate was settled in September, 1962—over a year after the parties' marriage. The recorded title to the property remained unchanged, but Mrs. Mahaffey and her mother decided to "hold [the property] together on a 50/50 percent each" basis. Rather than telling Mr. Mahaffey about their arrangement, they told him throughout the marriage that the "estate was unsettled."

In 1964, the Huntsville–Madison County Airport Authority condemned a portion of the Madison County property for the construction of a new airport and paid Mrs. Mahaffey and her mother approximately $350,000. Following the condemnation, two tracts originally belonging to Mr. Cook remained—a 92.44–acre tract adjacent to the airport[1] and another 54–acre tract.

Mrs. Mahaffey and her mother used a portion of the condemnation proceeds to buy farm property in Limestone County, Alabama. In July, 1965, they purchased a 320–acre tract (the "north tract")[2] and in December, 1965, they purchased an adjoining 320 acre tract (the "south" tract). They held both tracts as tenants in common, and each woman received approximately $10,000 to $15,000 annually in rent from the property. Mrs. Mahaffey kept her rent money in a separate account and rarely used it for the family expenses.

The parties moved to Fayetteville in 1968. They purchased an old home using part of the condemnation proceeds. Over Mr. Mahaffey's objections, Mrs. Mahaffey insisted that the title to the house be placed in her name because "her money" had been used to purchase it.[3] They made substantial renovations to the house, and Mr. Mahaffey did much of the work himself. Mrs.

---

1. The title to this property had been in Mr. Cook's name alone. It had never been used as the family homeplace.

2. The trial court erred by concluding that this tract was worth $371,300 when it was acquired in 1979. Exhibit 1–E shows that Mrs. Mahaffey and her mother purchased this property in July, 1965 for $90,000. An appraiser testifying for Mrs. Mahaffey stated that the property was worth $370,700 in April, 1979 (presumably

when Mr. Mahaffey began to farm it). Thus, the value of the property appreciated $354,200 during the marriage or $73,500 while Mr. Mahaffey was farming it.

3. Mr. Mahaffey again raised the issue of the title of the house in 1971 or 1972. Mrs. Mahaffey refused to change the title and told Mr. Mahaffey that she intended to leave the house to her mother.

Mahaffey bought approximately five additional lots adjacent to the house between 1970 and 1978, so that the Fayetteville holdings eventually totalled approximately thirteen acres.

Mr. Mahaffey's consulting business did not occupy all his time. In 1978, he decided to begin farming the 320 acre north tract in Limestone County. The south tract had already been leased, but Mrs. Mahaffey's mother agreed to let him begin farming it after the tenants were given a year's notice. Mr. Mahaffey obtained an unsecured loan for operating funds and obtained other funds from the Soil Conservation Service in order to improve the property. He raised a good crop of soybeans in 1979 even though he did not have prior farming experience.

Mr. Mahaffey's initial success prompted the parties and Mrs. Mahaffey's mother to agree to expand the farming operation to the other property. When they tried to borrow additional operating capital, the lenders insisted on using the land as security for the loans. In August, 1980, in order to facilitate obtaining operating loans, the parties executed a deed conveying the south tract in Limestone County to Mrs. Mahaffey's mother, and Mrs. Mahaffey's mother executed a deed conveying her interest in the north tract in Limestone County to Mrs. Mahaffey.

Mr. Mahaffey farmed full-time, but his efforts were largely unsuccessful after 1979 because of the dry weather. The parties borrowed $300,000 from the Federal Land Bank in December, 1981, using the north tract in Limestone County as security.

After two years of drought, Mrs. Mahaffey began to sour on Mr. Mahaffey's farming. However, in February, 1982, Mrs. Mahaffey's mother conveyed her interest in the 54–acre tract in Madison County to her daughter to enable the parties to borrow

more money for the farm operations.[4] Later, in May, 1983, the parties borrowed $450,000 from the Peoples Bank of Elk Valley. This loan was secured by a first mortgage on the 54–acre Madison County tract and the Fayetteville property and by a second mortgage on the north tract in Limestone County.

Mr. Mahaffey began farming the 54–acre tract and 60 acres of the 92.44–acre tract in 1981 or 1982. However, the dry weather continued, and the farms lost over $90,000 in 1981, over $141,000 in 1982, and over $189,000 in 1983. Mr. Mahaffey stopped farming in 1984. He sold most of the equipment and applied the proceeds to the farm debts. He also leased the Limestone County property and applied this income to the farm debts as well.

The parties' primary dispute involves the status of the four tracts of property held in Mrs. Mahaffey's name at the time of the trial: (1) the 92.44–acre tract in Madison County near the airport; (2) the 54–acre tract in Madison County; (3) the 320–acre north tract in Limestone County; and (4) the house and thirteen acres in Fayetteville. They also disagree concerning the acquisition or basis cost of the property and the extent of its appreciation during the marriage. Thus, like the trial court, we will consider each tract.

■ The 92.44–acre tract near the airport is the most hotly contested property because it is the most valuable. It is adjacent to large factories recently constructed by Chrysler Corporation and the Boeing Company. Even though Mr. Mahaffey cleared and farmed a portion of the property for several years, its highest and best use is for industrial purposes. The land was worth $87,818 when the parties were married, and its appraised value at the time of the hearing was $1,886,600.[5] This property is also subject to Mrs. Mahaffey's

4. Mrs. Mahaffey and her mother also testified that in return for conveying her interest in the 54–acre tract, Mrs. Mahaffey's mother would receive Mrs. Mahaffey's interest in the 92.44 acre tract. This agreement was never reduced to writing and is not embodied in a formal conveyance similar to the other transactions between mother and daughter.

5. Mrs. Mahaffey sold this property after the trial for less than its appraised value. We have denied her Tenn.R.App.P. 14 motion to consider the actual sale price as a post-judgment fact. Mrs. Mahaffey did not object to Mr. Mahaffey's proof of value and even stipulated the expertise of the appraiser who offered it. Even though she presented her own expert proof concerning

mother's dower interest which has a present value of $294,005.

Mrs. Mahaffey and her mother acquired the 320–acre north tract in Limestone County in 1965 for $90,000. It was worth approximately $370,700 in 1979 and $444,200 in February, 1987. The 54–acre tract in Madison County was worth $13,900 when the parties were married and $267,200 in February, 1987. The basis cost of the house and property in Fayetteville was $81,300, and the property was worth $209,500 at the time of the trial.

| Wife | | Husband | |
|---|---|---|---|
| 54 acre tract | $ 267,200 | Fayetteville property | $209,500 |
| 320 acre tract | 444,200 | 1987 Ford | 15,000 |
| 92.44 acre tract | 1,092,595 | Mahaffey Res. stock | 25,000 |
| Antique furniture | 3,000 | 1970 Mercedes | 3,000 |
| Checking account | 8,000 | 1970 Chevrolet truck | 2,500 |
| Household goods | 42,500 | Motorcycle | 3,000 |
| | | Household goods | 42,500 |
| | | Cash from wife | 52,326[6] |
| Real estate debts | (462,000) | Grain bin debt | (5,000) |
| | | Ford Motor Corp. | (14,500) |
| TOTAL ASSETS | $1,857,495 | | $352,826 |
| TOTAL DEBTS | 462,000 | | 19,500 |
| NET DISTRIBUTION | 1,395,495 | | 333,326 |

Under the trial court's distribution plan, Mr. Mahaffey was entitled to receive $270,836 (the value of his share in the appreciation in the value of the real property less his share of the debts). The trial court provided Mr. Mahaffey his net share by awarding him the Fayetteville property worth $209,500 and by requiring Mrs. Mahaffey to pay him an additional $61,326. It awarded Mrs. Mahaffey the three remaining tracts worth $1,803,995 and made her responsible for the entire amount of the real estate debt since she received the property securing the bulk of the loans.

Tenn.Code Ann. § 36–4–121(a) (Supp. 1988) gives trial courts broad discretion in

### III.

The trial court decided that the appreciation in the value of all four tracts during the marriage was marital property. It also determined that Mrs. Mahaffey should receive two thirds of the marital real estate and Mr. Mahaffey one third and that the debts secured by the real property should be divided equally. Accordingly, it divided the marital property in the following manner:

dividing marital property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983). Their decisions are entitled to great weight on appeal, *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn.Ct.App.1973), and are presumed to be correct unless the evidence preponderates otherwise, *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn.Ct.App. 1983), or unless they are based on an error of law.

### A.

■ Mrs. Mahaffey takes issue with the trial court's finding that the appreciation of the real property in Madison and Limestone

the value of the other disputed tracts, she offered no proof concerning the value of this tract. This evidence comes too late. In any event, we are of the opinion that the manner in which the trial court divided the marital estate remains equitable even if the actual sales price of the property were considered.

6. The trial court awarded Mr. Mahaffey $61,326 but later gave Mrs. Mahaffey a $9,000 credit "to equalize her interest in the marital personal assets." In accordance with the trial court's instructions, we have credited Mrs. Mahaffey's payment to Mr. Mahaffey with $9,000.

Counties is marital property.[7] She insists that Mr. Mahaffey's contributions were not substantial, that they had no specific connection with the property, and in fact, that they resulted in the accumulation of a large debt. While the parties' amassed a large farm debt, the record shows that Mr. Mahaffey made both direct and indirect contributions to the preservation and appreciation of all three tracts.

As a general rule, inherited property is viewed as separate property that is not subject to division as part of the marital estate in a divorce case. *See* Tenn.Code Ann. § 36-4-121(b)(2). However, Tenn. Code Ann. § 36-4-121(b)(1) provides that the income from and increase in value of separate property will be considered to be marital property subject to division "if each party substantially contributed to the separate property's preservation or appreciation."

Substantial contributions are ones which are real and significant. They need not be monetarily commensurate with the appreciation in the property's value during the marriage. Accordingly, the Tennessee Supreme Court has permitted a spouse who spent $7,544 in improving a house to share in the $51,700 appreciation in the house's value during the marriage. *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn.1988).

Likewise, the contributions need not be directly related to the specific property involved. They are substantial if they enabled the spouse who owns the property to retain it during the marriage. Thus, Tenn. Code Ann. § 36-4-121(b)(1) provides that a substantial contribution can include "the direct or indirect contribution of a spouse as homemaker, wage earner, parent, or family financial manager, together with such other factors as the court having jurisdiction thereof may determine."

Mr. Mahaffey's efforts during the marriage contributed directly to the appreciation in the value of the Madison and Limestone County tracts. He farmed the property from 1978 to 1984. Even Mrs. Mahaf-

fey's appraiser stated that the increase in the value of the 54-acre tract and the 320-acre tract after 1978 was due to the improvements Mr. Mahaffey had made. He used his own funds to pay the property taxes on all the tracts throughout the marriage and also repaid part of the debt the parties accumulated between 1978 and 1984.

Mr. Mahaffey's indirect contributions also helped Mrs. Mahaffey retain the property. He paid all the parties' income taxes with the exception of one year. While Mrs. Mahaffey and her mother were critical of his ability to provide for the family, Mr. Mahaffey nevertheless paid all the normal household expenses after the early years of the marriage. Mrs. Mahaffey kept her funds in a separate account and rarely used them for the family's expenses. On one occasion, Mr. Mahaffey was required to borrow money for medical bills even though Mrs. Mahaffey had funds available. On the occasions when Mrs. Mahaffey did pay for family expenses, she treated the money as if it were a loan.

The proof does not preponderate against the trial court's finding that Mr. Mahaffey made substantial direct and indirect contributions to the preservation and appreciation in the value of Mrs. Mahaffey's Alabama property. Accordingly, we affirm the trial court's distribution of the marital real property.

## B.

■ Mrs. Mahaffey also insists that the trial court erred by requiring her to be responsible for repaying the $462,000 in debts remaining from the farming operation. She insists that Mr. Mahaffey caused the debt and should be required to pay it. We disagree.

Trial courts have the authority to apportion marital debts in the same way they divide the marital estate. *See Whitley v. Whitley,* 757 P.2d 849, 850 (Okla.Ct.App. 1988); 2 H. Clark, *The Law of Domestic*

---

7. Mrs. Mahaffey concedes in her brief that the appreciation in the value of the Fayetteville

house and land is marital property.

*Relations in the United States* § 16.4, at 198 (2d ed. 1987). When they are dealing with debts, the courts consider the following factors: (1) which party incurred the debt and the reason for the debt, *see Dahlberg v. Dahlberg*, 358 N.W.2d 76, 80 (Minn. Ct.App.1984); (2) which party benefitted from the loan, *Bodie v. Bodie*, 590 S.W.2d 895, 896 (Ky.Ct.App.1979); *Shink v. Shink*, 140 A.D.2d 506, 528 N.Y.S.2d 847, 849 (1988); and (3) which party is better able to assume the debt. *Geldmeier v. Geldmeier*, 669 S.W.2d 33, 35 (Mo.Ct.App.1984).

Mr. Mahaffey was not the only member of the family involved in the farming venture, even though he was responsible for the day-to-day management of the farm. Mrs. Mahaffey and her mother gave Mr. Mahaffey permission to farm the land with the understanding that they would receive the profits. They also participated in borrowing the money for the farm operations by signing the notes and by agreeing to use the property to secure the loans. Since Mrs. Mahaffey stood to gain had the farm been successful, it is appropriate to view her as one of the persons responsible for the payment of the debt.

We concur with the trial court's finding that both parties are responsible for the farm debts and that Mrs. Mahaffey should be required to pay them. Mrs. Mahaffey received most of the property that secured the debts. The value of the tracts she received exceeded the amount of her equitable share of the marital estate as determined by the trial court. Allocating Mr. Mahaffey's portion of the debts to Mrs. Mahaffey offset the value of the property she received.

### C.

■ The overall effect of the trial court's division of the marital estate is equitable. However, in arriving at its decision, the trial court did not specifically determine whether the Fayetteville house and property were marital property and, therefore, subject to division.

The Fayetteville house and property were initially Mrs. Mahaffey's separate property because both were purchased in exchange for inherited property. While Mrs. Mahaffey clearly indicated her intention to treat her farm income as separate property, there is no evidence that she intended to maintain the Fayetteville house and property as separate property. The family lived in the home, and Mr. Mahaffey paid the property taxes and was responsible for many of the repairs and renovations to the house.

When determining the status of property in a divorce case, we look to the use to which the property was put, not merely its title. *See Jones v. Jones*, 597 S.W.2d 886, 887 (Tenn.1979); *Langford v. Langford*, 220 Tenn. 600, 604, 421 S.W.2d 632, 634 (1967). Mrs. Mahaffey's acts are inconsistent with the notion that the Fayetteville property should be treated as separate property. Since the parties treated it as marital property during the marriage, it should be treated as marital property for the purposes of division. *See* 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.2, at 185 (2d ed. 1987).

### IV.

■ Mrs. Mahaffey also launches a vague constitutional attack on the constitutionality of the present version of Tenn. Code Ann. § 36–4–121(b)(1). She appears to argue that applying the 1987 amendment to the statute [8] to her case violates U.S. Const. amend. XIV, Tenn. Const. art. I, § 8, and Tenn. Const. art. XI, § 8 because it deprives her of her property without receiving anything in return. We disagree.

Recognition of the value of a spouse's direct and indirect contributions to a marriage did not originate with the enactment of the 1987 amendment to Tenn.Code Ann.

---

**8.** Act of March 30, 1987, ch. 122, § 1, 1987 Tenn.Pub. Acts 167 added the following language to Tenn.Code Ann. § 36–4–121(b)(1):

As used in this definition, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent, or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

§ 36–4–121(b)(1). Since at least 1959,[9] courts have had the prerogative to adjust divorcing parties' jointly owned property, *Kittrell v. Kittrell,* 56 Tenn.App. 584, 589, 409 S.W.2d 179, 182 (1966), including "every legal or equitable interest recognized at law or by equity in any kind of property held in the name of either party, or both parties." *Jones v. Jones,* 597 S.W.2d 886, 887 (Tenn.1979). These interests include those arising as a result of a spouse's contributions to the marital estate. *See Langford v. Langford,* 220 Tenn. 600, 604, 421 S.W.2d 632, 634 (1967); *Kittrell v. Kittrell,* 56 Tenn.App. at 591, 409 S.W.2d at 183; *Walden v. Walden,* 13 Tenn.App. 337, 345 (1930).

Even Mrs. Mahaffey recognizes that there is no constitutional infirmity in the trial court's property division if Mr. Mahaffey's contributions are not "so insignificant as to approach zero." The trial court found that Mr. Mahaffey's contributions to the appreciation in the value of the real property were substantial. We concur, and, therefore, the appreciation in the value of the real property was not separate property but marital property. Since it was marital property, there was no constitutional impediment to its division or to the trial court's decision to award Mr. Mahaffey the Fayetteville property in order to effectuate an equitable distribution.[10]

## V.

 Finally, Mrs. Mahaffey asserts that the trial court should not have permitted Mr. Mahaffey to introduce evidence concerning the present value of the 92–acre tract near the airport in Madison County. Her objection goes to relevance and appears to be based on her insistence that

this property belonged to her mother not to her.

Whether or not this property belonged to Mrs. Mahaffey or to her mother was a factual question. The trial court must necessarily have found that the 92–acre tract was not owned by Mrs. Mahaffey's mother because it treated the property as part of the marital estate. We review the trial court's factual determinations pursuant to Tenn.R.App.P. 13(d). *Robinette v. Robinette,* 726 S.W.2d 524, 525 (Tenn.Ct.App. 1986). We have examined the proof and cannot conclude that the evidence preponderates against the trial court's finding. There is no competent evidence that Mrs. Mahaffey ever conveyed her interest in the 92–acre tract to her mother. Therefore, because Mrs. Mahaffey failed to prove the factual premise upon which her relevancy objection was based, we decline to reverse the trial court for receiving evidence of the 92–acre tract's value.

## VI.

The judgment of the trial court is affirmed, and the case is remanded to the trial court for whatever further proceedings may be required. The costs of this appeal are taxed to Martha Jo Mahaffey and her surety for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.

---

9. *See* Act of March 12, 1959, ch. 192, 1959 Tenn. Pub. Acts 564.

10. Tenn.Code Ann. § 36–4–121(f)(1) gives the courts the authority to "make a distributive award of money or other property to supplement, facilitate or effectuate a distribution of marital property." To accomplish this, Tenn. Code Ann. § 36–4–121(a) also gives the courts the power to "divest or reinvest title to such property."