# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

MARY S. FENDLEY,     )
             )
Plaintiff/Appellee,     )
             )  Montgomery Chancery
             )  No. 94-76-171
VS.           )
             )  Appeal No.
             )  01A01-9509-CH-00418
MART G. FENDLEY,     )
             )
  Defendant/Appellant.   )

FILED

July 2, 1997

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT
FOR MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE THOMAS E. GRAY, CHANCELLOR

For the Plaintiff/Appellee:       For the Defendant/Appellant:

Jennifer D. Roberts         Roger A. Maness
Dickson, Tennessee         Marks, Shell, Maness & Marks
                 Clarksville, Tennessee

## AFFIRMED AS MODIFIED
## AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the classification of property in a divorce case. The wife filed for divorce in the Chancery Court for Montgomery County after seventeen years of marriage. Following a bench trial, the trial court declared the parties divorced and awarded the wife custody of the four minor children. In its division of the parties' property, the trial court classified the parties' home as marital property and awarded it to the wife but classified the household furniture, funds inherited by the wife, and a limited partnership interest in an athletic club as the wife's separate property. The husband takes issue on this appeal with the allocation of the responsibility for the debt on the home, the classification of separate property, and the overall distribution of the marital estate. We have determined that the trial court should have allocated the debt secured by the home to the wife and that the trial court correctly classified the disputed assets and equitably distributed the marital estate.

## I.

Mary S. Fendley and Mart G. Fendley were married in Clarksville in August 1977. They moved to Memphis after the wedding to enable Mr. Fendley to attend law school. Ms. Fendley worked as a contact lens technician while Mr. Fendley attended law school. The parties returned to Clarksville in July 1980 after Mr. Fendley graduated from law school and completed the bar examination.

Ms. Fendley's grandmother died shortly before the parties returned to Clarksville, leaving as part of her estate a fully furnished house at 411 Idaho Springs Road. Ms. Fendley's parents invited their daughter and son-in-law to move into the house when they returned to Clarksville. The parties moved into the house in August 1980 and lived there rent-fee until December 1982 when they purchased the house and property for $40,000 from Ms. Fendley's parents.

The house on Idaho Springs Road was built in 1938 and needed extensive repairs. The parties went to work immediately restoring and renovating the house.

Throughout the marriage, much of the parties' disposable income, as well as Ms. Fendley's inherited income, was spent on improvements to the property.

Ms. Fendley received two inheritances during the marriage. On her twenty-fifth birthday in 1982, Ms. Fendley received $26,000 from a trust established by her grandparents. She used these funds to purchase an automobile for Mr. Fendley, to pay the parties' taxes, and to pay for some of the home improvements. In 1990, Ms. Fendley received a second inheritance of $69,500. She deposited these funds in a separate account in her own name and withdrew portions of the funds during the marriage to purchase central heat and air conditioning for the house, to purchase a boat from her father, and to purchase a truck. Ms. Fendley also used $10,000 of these funds to purchase a limited partnership interest in one of her brother's business ventures called the Clarksville Athletic Club.

Mr. Fendley's law firm later merged with another firm that represented Heritage Bank. In order to enhance his relationship with the bank and to obtain other banking privileges, Mr. Fendley requested Ms. Fendley to withdraw her inherited funds from her separate account at the Guaranty Federal Savings and Loan Association and to deposit them in the Heritage Bank. Acting on the understanding that the funds would remain her separate property, Ms. Fendley withdrew approximately $29,000 from Guaranty Federal Savings and Loan and deposited it in a joint account at the Heritage Bank. Notwithstanding their agreement that the money remained Ms. Fendley's separate property, Mr. Fendley later withdrew funds from the account, without Ms. Fendley's knowledge or permission, to pay taxes and to fund individual retirement accounts.

The parties had four children before they separated in July 1994. Ms. Fendley filed for divorce in August 1994. Following a bench trial, the trial court declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129(b) (1996), awarded Ms. Fendley custody of the children, and directed Mr. Fendley to pay $2,206 per month in child support. The trial court also awarded the parties their personal property and determined that most of the antique furniture and furnishings, the remainder of the funds Ms. Fendley inherited in 1990, and the $10,000 investment in the Clarksville Athletic Club were Ms. Fendley's separate

property. The trial court classified the house on Idaho Springs Road as marital property and awarded the house to Ms. Fendley.

## II.

We need not tarry long with Mr. Fendley's first issue with regard to the allocation of the debt secured by the marital home. He asserts that the trial court should have specifically allocated this debt to Ms. Fendley because she was awarded the house that secured the debt. The trial court simply overlooked this debt, and Ms. Fendley readily concedes that she should be responsible for it. Accordingly, the final divorce decree should be modified on remand to reflect that Ms. Fendley is responsible for the remaining indebtedness on the house and to require her to hold Mr. Fendley harmless for this debt.

## III.

Mr. Fendley's principle argument is that the trial court erroneously classified as personal property the remainder of Ms. Fendley's inherited funds, her investment in the Clarksville Athletic Club, and the antique furniture once owned by Ms. Fendley's grandmother, great aunt, and other members of her family. We have determined that the trial court properly classified this property.

## A.

Distributing the parties' property is an integral part of every divorce case. This property must be classified as either separate or marital property, and property that does not fit the definition of "separate property" must be considered to be "marital property." *Kendrick v. Kendrick,* 902 S.W.2d 918, 924 (Tenn. Ct. App. 1994). Tenn. Code Ann. § 36-4-121(b)(2) defines "separate property" as: "(A) All real and personal property owned by a spouse before marriage; (B) Property acquired in exchange for property acquired before the marriage; (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and (D) Property acquired by a spouse at any time by gift, bequest, devise or descent."

-4-

While the statutory definition of "separate property" focuses on the source of the property, the courts must also consider the way that the parties have used the property during the marriage because title alone is not necessarily controlling. *Langford v. Langford,* 220 Tenn. 600, 604, 421 S.W.2d 632, 634 (1967); *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 624 (Tenn. Ct. App. 1989); *Robinette v. Robinette,* 726 S.W.2d 524, 525 (Tenn. Ct. App. 1986). Otherwise separate property can be transmuted into marital property if the parties treat it as marital property and if there is no evidence that the spouse owning the property intended that it remain separate. *McClellan v. McClellan,* 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993); *Batson v. Batson,* 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988).

Classifying property as separate or marital is a question of fact. *Cutsinger v. Cutsinger,* 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995); *Sherrill v. Sherrill,* 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992). Thus, a trial court's classification decisions are entitled to great weight on appeal. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). These decisions will be presumed to be correct unless the evidence preponderates otherwise, *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983), or unless they are based on an error of law. *Mahaffey v. Mahaffey,* 775 S.W.2d at 622.

## B.
### THE FURNITURE AND HOUSEHOLD ITEMS

Many of the furniture and furnishings in the Idaho Springs Road house can be traced back to members of Ms. Fendley's family. Most of Ms. Fendley's grandmother's furniture remained in the house after she died in 1980.[1] Even though Ms. Fendley's father inherited this property, he left much of it in the house and permitted his daughter and son-in-law to use it. Later, in 1990, Ms. Fendley's father permitted Ms. Fendley to select other furniture and furnishings from the

---

[1]This property included antique furniture and furnishings valued for insurance purposes at approximately $47,000. The most expensive items included Chippendale dining room furniture worth $25,800.

property he inherited from an aunt who lived in Illinois.[2]  In addition, Ms. Fendley's mother passed along several items of personal property that had once been in her family's Louisiana plantation.[3]

As so often happens with family heirlooms, Ms. Fendley's parents did not prepare formal written documents concerning their disposition of this property or their wishes concerning its ultimate fate.  They never specifically informed either Ms. Fendley or Mr. Fendley that they gave them the property as a joint gift or even that they had given the property to Ms. Fendley to do with as she pleased. Ms. Fendley's mother stated on several occasions during the marriage that she reserved the right to take any of the furniture back if she ever had room for it.  She also instructed Ms. Fendley to make sure that her children eventually received specific items of property.   The parties and their children used the property and specifically made sure that it was covered by their homeowner's insurance policy.

After she filed for divorce, Ms. Fendley asserted that this property, as well as the parties' wedding gifts, gifts she had received from her mother, and silverware she had obtained prior to the marriage, should be classified as her separate property.[4] Mr. Fendley countered by asserting that all the furnishings and personal property in the Idaho Springs Road house, regardless of their origin, were marital property because the parties had used them during the marriage and because neither Ms. Fendley nor her parents had expressed an intent that this property remain separate.  The trial court classified most of the property once belonging to members of Ms. Fendley's family as Ms. Fendley's separate property but included the parties' wedding gifts, the silverware Ms. Fendley had purchased prior to the marriage, and other furnishings bought during the marriage as marital property.

---

[2]This property included antique furnishings valued at approximately $21,300 for insurance purposes.

[3]This property included a love seat, Nippon and Limogues cut glass, and an antique urn valued at approximately $9,500 for insurance purposes.

[4]The parties valued this property at approximately $133,725 for insurance purposes.

Mr. Fendley now insists that the trial court erred in its classification because the doctrine of transmutation requires the furniture and furnishings to be classified as marital property. We disagree. The sole fact that the parties used the property during their marriage does not necessarily mean that Ms. Fendley's parents or Ms. Fendley herself intended to make a gift of this property to the marital estate. Ms. Fendley and her parents stated categorically that the property was not given to the parties jointly. Furthermore, the record contains evidence inconsistent with the conclusion that Ms. Fendley's parents gave them the property outright. Ms. Fendley made statements throughout the marriage indicating that she had not relinquished her right to control the ultimate disposition of the property.

Passing down family heirlooms is a commonplace occurrence. Sometimes it is accomplished with formality and ceremony, but more frequently, it is done informally and privately between family members. Thus, the absence of formal documents involving the disposition of this property is of little consequence to us under the facts of this case. The trial court had the opportunity to observe the parties and their witnesses as they testified and determined from this evidence that Ms. Fendley and her family did not intend that the family heirlooms would become marital property simply because Ms. Fendley and her family used them. We have no basis, on these facts, to conclude that the trial court erred by determining that the evidence demonstrated that Ms. Fendley and her parents intended that this property would remain in their family.

## C.
### THE REMAINING INHERITED FUNDS

Mr. Fendley also asserts that the trial court should have classified the funds Ms. Fendley deposited in their joint account at the Heritage Bank as marital funds. Relying again on the doctrine of transmutation, he insists that the fact that Ms. Fendley withdrew these funds from her own separate account and deposited them in a joint account can only support the conclusion that she intended to relinquish her control over these funds. The evidence does not support this argument.

Ms. Fendley received these funds by inheritance.  She deposited them in a separate account in her own name.  She used part of the funds for family purposes but intended to leave enough funds in the account to provide some assistance for the children's college education.  Ms. Fendley maintained complete control over these funds until Mr. Fendley convinced her that depositing them in another account at Heritage Bank would further his business interests.  Ms. Fendley complied with Mr. Fendley's request but only with the understanding that Mr. Fendley would have no control over these funds even if they were in a joint account.  After Ms. Fendley discovered that Mr. Fendley had withdrawn a portion of these funds without her permission, she deposited the funds in another separate account.

The mere fact that the funds were placed for a time in a joint account does not require that they be considered marital property.  Ms. Fendley's account of the use of these funds is largely undisputed and demonstrates that she never intended to relinquish her control over these funds.  Accordingly, we have no basis for concluding that the evidence preponderates against the trial court's conclusion that these funds were Ms. Fendley's separate property.

## D.
### THE HEALTH CLUB INVESTMENT

In his final classification issue, Mr. Fendley argues that the trial court should not have classified the $10,000 investment in the Clarksville Athletic Club as Ms. Fendley's separate property because the parties treated the investment as if it were marital property.  We concur with the trial court's conclusion that the funds used for the investment remained Ms. Fendley's separate property, even though the parties treated the income from the investment as marital property, and the entire family benefitted from the investment.

During the marriage, Ms. Fendley's brother started the Clarksville Athletic Club and offered Ms. Fendley and her sisters the opportunity to purchase limited partnership interests for $10,000.  The Fendleys decided that purchasing a limited partnership would be a good idea because the entire family would receive a

lifetime membership in the club.  Mr. Fendley intended to borrow the money for the investment, but Ms. Fendley decided to use her inherited funds in order to avoid any further indebtedness.  The partnership documents listed Ms. Fendley as the sole limited partner; however, the membership cards and club's report of income listed both Ms. Fendley and Mr. Fendley as the "individual" partner.

The parties reported the income from the investment on their joint tax returns, and there is no dispute that they considered the income to be marital property.  After the parties separated, Ms. Fendley liquidated the limited partnership interest when she discovered that Mr. Fendley had withdrawn funds from the account she was maintaining for her children's college education.  She deposited the funds from the investment back into her children's college education account.

Ms. Fendley's decision to use a portion of her separate funds as an investment to the benefit of her family is not tantamount to a decision to relinquish all control over the funds.  While the lifetime memberships and the investment income were marital property, the funds as a matter of contract between the club and Ms. Fendley remained under her control.  Ms. Fendley continued to exercise control over the funds and eventually liquidated the investment and returned the funds to a separate account in her own name.  Under these facts, we have determined that the trial court correctly classified the funds from the liquidated investment in the health club as Ms. Fendley's separate property.

## IV.

As a final matter, Mr. Fendley asserts that the manner in which the trial court divided the marital estate was inequitable because the parties' circumstances are "rather equal."  Instead of awarding Ms. Fendley 61% and Mr. Fendley 39% of the marital estate, he insists that a more equal distribution would be appropriate.

Trial courts have broad discretion in dividing marital estates.  Tenn. Code Ann. § 36-4-121(a) (1991); *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983).

Accordingly, appellate courts customarily give great weight to their decisions involving the classification and allocation of marital property. *Wilson v. Moore,* 929 S.W.2d at 372. We will ordinarily defer to the trial court's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is unsupported by a preponderance of the evidence. *Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994); *Mahaffey v. Mahaffey,* 775 S.W.2d at 622; *Hardin v. Hardin,* 689 S.W.2d at 154.

The trial court's goal in every divorce case is to divide the parties' marital property in a just and equitable manner. A division of property is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen,* 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis,* 748 S.W.2d 424, 427 (Tenn. 1988); *Kendrick v. Kendrick,* 902 S.W.2d at 929, or because each party did not receive a share of every piece of marital property. *Brown v. Brown,* 913 S.W.2d at 168. In the final analysis, the justness of a particular division of marital property depends on its final results considered in light of the pertinent factors in Tenn. Code Ann. § 36-4-121(c). *Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990).

The value of the parties' entire marital estate is $243,946.26. The trial court's division of the estate awards property with a value of $148,569.02 to Ms. Fendley and property worth $95,377.24 to Mr. Fendley. Accordingly, the trial court has awarded Ms. Fendley 61% and Mr. Fendley 39 % of the marital estate. We have determined that this division is equitable under the facts of this case. Contrary to Mr. Fendley's assertion, we do not find that the parties' circumstances are essentially the same. Ms. Fendley helped Mr. Fendley complete his professional educational while curtailing her own. As a result, Mr. Fendley is better equipped to earn income and acquire capital assets than Ms. Fendley. Based on the parties respective ages, employability, and earning capacities, we have determined that the trial court's division of the parties' marital estate is equitable.

**V.**

We affirm the final divorce decree as modified herein and remand the case to the trial court for the amendment of the final decree to provide that Ms. Fendley is solely responsible for the payment of the remaining indebtedness secured by the Idaho Springs Road property and for any other proceedings that may be required. We also tax the costs of this appeal to Mart G. Fendley and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
SAMUEL L. LEWIS, JUDGE