IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 11, 2001 Session

## STAN WALLACE MOSLEY v. CARRIE LYNN CHECCHI MOSLEY

**Direct Appeal from the Chancery Court for Washington County**
**No. 6976     Hon. Jean A. Stanley, Judge**

**FILED MARCH 4, 2002**

**No. E2001-01006-COA-R3-CV**

In this divorce case, the husband appealed the classification and division of the parties' marital property and the basis for awarding child support. We affirm the Trial Court's Judgment, as modified.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed, as modified.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and WILLIAM H. INMAN, J., joined.

Daniel D. Coughlin, Kingsport, Tennessee, for Appellant, Stan Wallace Mosley.

Judith Fain, Johnson City, Tennessee, for Appellee, Carrie Lynn Checchi Mosley.

**OPINION**

In this divorce action, the parties stipulated there were grounds for divorce, agreed that the mother would have custody of the minor child and spousal support to wife of $650.00 per month. The issues reserved for trial were the division of marital property and support.

The husband testified that he is primary stockholder in Telescan (90%), which he started in 1987. The wife worked for Telescan before they were married, and returned to work for the corporation after they were married in April 1995. They had a daughter, aged 4 at the time of trial.

The husband offered as a witness a CPA who had worked on the company's books since 1998. This witness testified that the book value of Telescan was $524,00.00 on August 31, 1999, $763,000.00 on December 31, 1998, and $546,000.00 on December 31, 1994. As a witness,

she was not qualified as an expert in business valuation.

The wife offered a CPA who testified that he was a certified valuation analyst and accredited by the American Institute of CPA's, in business valuation since 1997. The parties stipulated he could testify as an expert. He was of the opinion that the husband's interest in the business at the time of the parties' marriage was $639,000.00, and at the date nearest the time of the parties' separation (December 31, 1998), the husband's interest was $801,900.00. He further testified that as of the date nearest the time of the parties' divorce in August of 1999, the husband's interest was $477,000.00. He testified that the 1999 value was less reliable because it was only based on performance through eight months of the year. He explained that Telescan had been profitable for seven years and then "all of a sudden" in 1999 the company lost $201,000.00 by August. He explained that part of the loss was due to a $38,000.00 lawsuit settlement paid out, and there was also a substantial decline in advertising. He testified that Telescan had spent $40,000.00 on advertising in 1998, and had spent less than $2,000.00 in 1999. He further testified that Telescan had excess retained earnings compared to the industry norm, and this represented money which should have been distributed as income.

At the conclusion of the trial, the Court found that the wife had made a significant contribution to Telescan, and credited the testimony of the expert regarding the value of the business. The Court further found that the intangibles and goodwill of the business came about mainly due to the efforts of the husband, but the husband had admitted he had reduced his advertising and other efforts to obtain new business during the divorce, and that his actions reduced the income and growth of Telescan. The Court relied on the expert's testimony that the value of the business had increased during the marriage of the parties by an amount of $162,900.00, and concluded the wife was entitled to a share in the in the amount of $54,000.00.

The Court divided the remainder of the parties' marital property, set child support, and found that the wife was entitled to additional rehabilitative alimony of $500.00 per month for six months. The husband attempted to appeal the Trial Court's Judgment, but this Court dismissed the appeal because the Judgment was not final. After remand, the Trial Court entered an Amended Judgment after a further hearing on the issue of retained earnings and child support. The Court then determined that the retained earnings of Telescan was higher than the industry norm, and that $220,000.00 of those earnings should be amortized over three years and should be considered as part of the husband's income for the purpose of setting child support. The Court adjudged the husband's annual income, finding the same to be $12,675.00 per month gross, and set child support at $1,819.00 per month.

On appeal, the husband argues that the Trial Court erred in classifying the increase in the value of Telescan as marital property, used the wrong valuation date, and further erred in awarding the wife a third of the increase in the company's value and half of the increase in the value of the marital residence. He further insists that the Court erred in imputing the retained earnings of Telescan to the husband as income for purposes of child support.

Husband argues that there is no proof that the wife made a substantial contribution to the increase in the value of Telescan. Tenn. Code Ann. §36-4-121 states that "substantial contribution" may include "the direct or indirect contribution of a spouse as a homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine."

The Trial Court's finding that the wife had substantially contributed to Telescan is supported by the evidence, not only because she testified that she did significant work there (which husband did not really dispute), but that she also contributed as a homemaker and caretaker for the parties' minor child. The evidence does not preponderate against this determination. Tenn. R. App. P. 13(d). *Also see Wright-Miller v. Miller*, 984 S.W.2d 936, 943-944 (Tenn. Ct. App. 1998).

Next, the husband takes issue with the Trial Court's valuation of Telescan, arguing that the Court should have used the opinion of value as of August 1999, which was closer to the date of the parties' divorce, and bases his argument on Tenn. Code Ann. §36-4-121(b)(1)(A), which states that marital property "shall be valued as of a date as near as reasonably possible to the final divorce hearing date." In this case, the divorce decree was in September 1999, and the parties had separated in late 1998.

The valuation of assets is a question of fact, and there is a presumption on appeal that the Trial Court's valuation is correct. *Watters v. Watters*, 959 S.W.2d 585 (Tenn. Ct. App. 1997). In our view, the Court was correct in determining the value that was reflected in August of 1998, since the evidence establishes the business could have been more profitable in 1999, had it not been for the lack of advertising and seeking new business. The proof is uncontradicted that the husband had complete control over such decisions, and he admitted that he did not advertise in 1999 and did not seek new customers because of problems he was having with Sprint, one of his long distance suppliers. Moreover, the one-time lawsuit settlement payment which occurred in 1999 should not be taken into account, according to the expert testimony. There was proof that the husband manipulated the expenses of Telescan by utilizing Telescan funds for personal expenditures and writing commission checks to "supplement his income". Under all the circumstances of this case, we affirm the Trial Court's Judgment as to the value of the Telescan.

As to the pro-ration of the marital property, the Trial Judge had broad discretion, and its decision is entitled to great weight on appeal. *Mahaffey v. Mahaffey*, 775 S.W.2d 618 (Tenn. Ct. App. 1989).

The husband's appeal focuses on the pro-ration of two assets. The Court awarded the wife one-third of the increase in value of Telescan, finding that the husband made a greater contribution to its increase than the wife, and awarded the wife one-half of the increase of equity in the marital residence. The evidence established that the wife had contributed to the increase in same by overseeing and/or making improvements to the home herself. The valuation and increase was based on the husband's testimony, and the Court's determination as to the increase was supported by the proof. We find the Court's division was equitable, based upon the wife's contributions and

the statutory factors.

The wife argues that the Trial Court erred in reducing the wife's share of the increase in value of Telescan for goodwill and intangibles, because this was not a business which is reliant upon husband's personal involvement and reputation. In this case the Court said that "because of the Court's consideration of the intangibles and good will which the Court finds was mainly from the efforts of Plaintiff/Counter-Defendant the Court finds that of the increase, Defendant/Counter-Plaintiff is entitled to Fifty-four Thousand Dollars ($54,000.00)." The court simply attributed more of the increase to the husband, based upon his contribution to the business, as compared to the contribution of the wife. This is appropriate under Tenn. Code Ann. §36-4-121, which allows the court to consider the parties' contributions to the assets in making a property division. *Accord: Wright v. Quillen,* 909 S.W.2d 804 (Tenn. Ct. App. 1995).

Finally, the husband argues that it was improper for the Trial Court to impute income to him from the excess retained earnings of Telescan for the purpose of establishing child support. Husband relies upon the case of *Piper v. Andrews*, 1999 WL 772127 (Tenn. Ct. App. Dec. 17, 1997), wherein the Court held that retained earnings of a corporation of which husband was the sole shareholder would not be imputed to husband as income, because there was no evidence that the retained earnings were excessive, and the company's accountant testified that the amount of retained earnings was consistent with prudent business practices.

The wife, however, relies upon the case of *Sandusky v. Sandusky*, 1999 WL 734531 (Tenn. Ct. App. Sept. 22, 1999), where the Court held that income could be imputed to the sole owner of a business for the purpose of setting child support. It was explained that in a self-employment situation where the obligor spouse could control the salary he or she received, the court should examine whether the obligor had the potential to manipulate his or her income by allowing the company to accumulate profits as retained earnings, which could have been distributed as dividends. In this case, husband is not the sole shareholder, but does own 90% of the stock, and has the authority to manipulate his income by accumulating retained earnings in the company if he chooses. The proof showed that the company had $200,000.00 in retained earnings when the parties married, and had $425,000.00 in retained earnings at the end of 1998, and had $240,000.00 in retained earnings in August 1999. The Trial Court imputed the entire increase in retained earnings from December 1994 to December 1998, ($225,000) as income to husband, and amortized it over three years.

The guidelines provide that all income "from any source" is to be considered (Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)), and the evidence supports the imputation of additional income based upon the company's excess retained earnings and the husband's control of the corporation. The parties agree in their briefs that the Trial Court should have reduced any amount imputed by 10%, since the husband only owns 90% of the corporation.

Accordingly, we affirm the Trial Court's property division in all respects, but modify the Trial Court's finding of additional income by reducing that amount by 10%. Upon remand, the

-4-

Trial Court is directed to enter an Order reducing the child support by an amount to reflect the 10% reduction in income imputed to the husband. The Judgment of the Trial Court is affirmed, as modified, and the cause remanded with the cost of the appeal assessed to Stan Wallace Mosley.

_____
HERSCHEL PICKENS FRANKS, J.