IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2001 Session

## JASON C. GOULET v. JENNIFER HEEDE

**Appeal from the Circuit Court for Sevier County**
**No. 96-1011-III     Norma McGee Ogle, Judge**

**FILED JANUARY 31, 2002**

**No. E2000-02535-COA-R3-CV**

This appeal concerns a divorce action in which the court classified a home purchased by Wife during the marriage as her separate property and a second mortgage taken out by Husband on the couple's marital home as his separate debt. Husband appeals both of these decisions and also questions the trial court's decision to find Wife's testimony credible, since she had previously given testimony in another matter that was inconsistent with her testimony at the divorce hearing. We determine that the trial court should be affirmed on all issues presented.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and JOHN A. TURNBULL, SP. J., joined.

Rebecca C. McCoy, Sevierville, Tennessee, for the appellant, Jason C. Goulet.

Martha Meares and Gretchen S. Johnson, Maryville, Tennessee, for the appellee, Jennifer Heede.

### OPINION

This case involves a divorce between two parties who have both shown a propensity for dishonesty and poor judgment. The parties met when they were both living in Florida. Plaintiff/ Appellant, Jason Goulet, owned a neon sign business, which he later relocated to Tennessee. Prior to the parties' marriage, Goulet lived in an apartment and owned no assets outside the business other than his automobile.

Jennifer Heede, Defendant/Appellee in this matter, had a run of good fortune prior to meeting Goulet. Between the ages of 18 and 30, she had been the recipient of life insurance proceeds and an inheritance together totaling more than $200,000.00, which was kept in a separate Dean Witter account. The bulk of this money she received in 1994 upon her 30th birthday. In addition to her inheritance, Heede also had the privilege of being a contestant on The Price is Right television show and had won approximately $13,000.00 worth of merchandise.

Prior to their marriage in August 1994, the parties lived together in a townhouse owned by Heede. They shared living expenses while living in Heede's townhouse, and continued to live there after their marriage until November of 1994, at which time the parties moved to Tennessee.

In January 1995, they purchased a home in Sevierville, Tennessee. Ms. Heede paid $26,000.00 out of her inheritance plus another $6,000.00, apparently left from the sale of the Florida townhouse, toward the down payment and closing costs on this home in Tennessee. Goulet, thereafter, paid most, if not all, of the mortgage payments on the Tennessee home.

Things broke down fairly quickly for these parties, as Goulet testified that his wife spent most of her time back in Florida from January 1995 through March 1995, and Heede testified that they agreed to separate in January or February of 1995. Some time that year, Heede decided to move back to Florida. She closed on a house in Florida on November 2, 1995, paying $34,492.06 out of her Dean Witter account at the closing. She has continued to pay all mortgage payments on this property.

On December 21, 1995, Goulet took out a second mortgage on the Tennessee home for $11,125.00 and then paid $11,500.00 to Heede. Heede testified that this money was to purchase her separate property that had been left in Tennessee. Goulet testified that this money was given to Heede for a down payment on their house in Florida, as he intended to join her in Florida. He further testified that, over the next few months, the parties talked on the phone frequently but never discussed divorce, as it continued to be their plan for Goulet to join Heede in Florida. This move never happened.

In March 1996 the parties took a vacation together. According to Heede, this vacation was taken just as friends and had been planned prior to their separation. According to Goulet, this vacation was taken as a couple and as a prelude to his moving to Florida. He testified that, following the vacation, the parties scouted for a location in Florida where he could relocate his business and that he assisted Heede in making some minor repairs to "their" house.

Goulet insisted that, as of this vacation, there still had been no discussion of divorce; yet, he stated that the parties only spoke once after their vacation and had no further conversation until Heede's deposition in 1998. On June 14, 1996, Heede's attorney forwarded a letter to Goulet memorializing a property settlement. In spite of living in different states for eight months and not talking to Heede for three months, Goulet testified that this letter came as a complete shock, as he had no idea that Heede was considering a divorce. He subsequently filed a petition for divorce in Tennessee on September 13, 1996.

The circuit court heard the divorce in August 1999, granting a divorce to the parties, determining their marital and personal property, and dividing the marital property and debts. Pertinent portions of the court's findings relative to this appeal are as follows:

> Shortly after the parties separated, the Wife purchased a condominium in Wellington, Florida (Stag Harbor). The Stag Harbor property was purchased in

November 1995 with assets from the Wife's trust fund. The Wife has made all mortgage payments on the property and paid all maintenance expenses, primarily from the trust fund. The Husband made no contributions toward the purchase of the property, nor has he made any mortgage payments. While the Husband, as spouse, signed the note and deed of trust, the title to the property is solely in the name of Wife. Based upon the proof presented, the Court finds that the Stag Harbor property is the Wife' separate property and is awarded to her.

The court also found that Heede's Dean Witter account, containing approximately $138,000.00 at the time of the hearing, was her separate property and that Goulet's business was his separate property. With regard to the home in Tennessee, the court found it to be marital property encumbered by a first mortgage, with a balance of around $59,000.00, and a second mortgage, with a balance of approximately $8,000.00. The court ordered that the home be sold, with costs of the sale and first mortgage to be paid from the proceeds, and the net split between Goulet and Heede. Goulet was to be responsible for the balance of the second mortgage from his share of the sale proceeds. With regard to the second mortgage, the court found that:

At the time of the marriage, the Wife was the owner of certain household furnishings which she won on the television show, "The Price Is Right". Subsequent to the separation, the Husband obtained a second mortgage on the Snapwood Property in the amount of $11,125.00. The Husband used the proceeds from the second mortgage to pay the Wife for her interest in the household furnishings and personal property which were left in the Sevierville residence when the Wife returned to Florida.

The court further awarded each party the household furnishings and personal property in his or her possession.

Goulet presents, basically, three issues for review: (1) whether or not the trial court could find Heede's testimony credible due to past perjurous testimony and inconsistent statements made by Heede; (2) whether or not the court erred in finding that Heede's Florida property was separate property; and (3) whether or not the court erred in finding the second mortgage on the Tennessee property to be Goulet's sole responsibility.

WITNESS CREDIBILITY AND INCONSISTENT STATEMENTS

A notable amount of time was devoted at trial by both parties in an attempt to show each other's lack of credibility and past dishonesty. Particularly, with regard to Heede, Goulet attempted to argue that Heede's prior instances of lying, as well as specific inconsistent statements made by her in this proceeding, invalidated much of her testimony.

Heede admitted to lying in a proceeding regarding another matter wherein she stated that she and Goulet intended to reconcile. At the hearing of this cause, Heede testified that they agreed to separate in January or February of 1995 and that she never had any intent or desire for reconciliation

with Goulet. Heede also testified in the prior matter that she had taken all her personal property when she left Tennessee and moved back to Florida. At the divorce hearing she testified that she left some $13,000 of personal property, as well as marital property, in Tennessee.

While Tennessee does recognize the rule of cancellation wherein contradictory statements by witness regarding the same fact may cancel each other out, *In Re Estate of Ross*, 969 S.W.2d 398, 400 (Tenn. Ct. App. 1997); *Price v. Becker*, 812 S.W.2d 597, 598 (Tenn. Ct. App. 1991); *State v. Caldwell*, 997 S.W.2d 110, 118 (Tenn. Crim. App. 1997), this rule of cancellation "applies when the inconsistency in testimony is unexplained and when neither version of the testimony is corrborated by other evidence." *Ross*, 969 S.W.2d at 400.

Upon review of the testimony and evidence, Heede presented a plausible explanation for these inconsistencies, which was found credible by the judge. Heede stated that Goulet had staged an automobile accident in order to file a fraudulent claim for damages and injuries. It was in Goulet's fraudulent suit for damages that she was asked, by Goulet, to testify falsely. As she was still married to Goulet at the time, Heede stated that she was afraid not to go along with his scheme. She also introduced documents showing a suit for fraud filed against Goulet as a result of his claim, and Goulet admitted dropping his claim after being sued for fraud without obtaining any money from the defendants to settle the claim.

Heede's testimony regarding her intent to reconcile is corroborated by her actions. She moved to Florida alone, purchased a separate home titled in her name and went more than four months without seeing Goulet. Heede's testimony regarding personal property left in Tennessee is corroborated by Goulet himself, as he admitted that she left some items of personal property, as well as marital property, when she moved to Florida (although there is some disagreement on what those items were).

Goulet points out many other "inconsistent statements" made by Heede throughout this divorce action. However, a review of those statements shows them to be an attempt to nit pick a layman's terminology or twist her words. The court had ample opportunity to view both these witnesses and listen to their testimony. With regard to the home purchased by Heede in Florida and the $11,500.00 paid by Goulet to Heede, the court found her version of all the "he said, she said" testimony more credible.

> The findings of the trial court which are dependent upon determining the credibility of witnesses are entitled to great weight on appeal. The reason for this is that the trial judge alone has the opportunity to observe the manner and demeanor of the witnesses while testifying. Indeed, the trial judge, on an issue which hinges on witness credibility, will not be reversed unless there is found in the record concrete and convincing evidence, other than the oral testimony of the witnesses, which contradicts the trial court's findings.

*Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991) (citations omitted). "Where the trial judge has seen and heard the witnesses, especially if issues of credibility and weight to be given

-4-

oral testimony are involved, considerable deference must be accorded those circumstances on review." *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). Heede's contradictory statements were explained and her divorce testimony was corroborated. Thus, the trial judge was not required to discount her testimony and was free to use his judgment, as the lone observer of all testimony given in this cause, to make factual determinations based on his opinion of witness credibility.

THE FLORIDA PROPERTY

It is Goulet's assertion that he paid Heede $11,500.00 in December 1995 for a down payment on the home in Florida and that he planned to move with her at a later date. He testified that, in March 1996, following a vacation taken by the parties, he assisted with some minor repairs like fixing the toilet and installing a ceiling fan. He further alleged that the property was purchased with the intent of being a marital home for the parties and that he had no notice or belief that a divorce was eminent until he received a property settlement proposal from Heede's attorney in June 1996. However, based on Heede's testimony and treatment of the property, the trial court determined that this Florida property was Heede's separate property.

> Trial courts are accorded wide discretion in classifying and dividing property in a divorce case, and their decisions are entitled to great weight on appeal. In accordance with Rule 13(d) T.R.A.P., the trial court's decision regarding the classification and division of marital property will be presumed correct unless the evidence preponderates otherwise.

*Corley v. Corley*, No. 01-A-01-9011-CH00415, 1991 WL 66447, at *5 (Tenn. Ct. App. May 1, 1991) (citation omitted); *see also Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). Unless the evidence preponderates against the trial court's determination, we must affirm the judge's decision to classify Heede's Florida property as separate property, and we find that the evidence does not preponderate against the findings of the trial court.

Tennessee is a dual property jurisdiction dividing all property into two classifications, marital and separate. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). These classifications are contained in Tennessee Code Annotated section 36-4-121(b). Separate property is therein defined as: "(A) All real and personal property owned by a spouse before marriage; (B) Property acquired in exchange for property acquired before the marriage; . . . (D) Property acquired by a spouse at any time by gift, bequest, devise, or dissent; . . . " Tenn. Code Ann. § 36-4-121(b)(2)(1996). The Code also defines marital property as, "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage." Tenn. Code Ann. § 36-4-121(b)(1)(A)(1996). "Despite the fact that certain property may have been acquired during the marriage, a party may rebut any presumption that the property is marital." *Dunlap*, 996 S.W.2d at 814. This rebuttal may be shown by demonstrating that the property is "separate property" under the section 36-4-121 (b)(2). *Id.*; *see also Batson*, 769 S.W.2d at 858.

The trial court found that Heede's inherited money kept in her Dean Witter account was her separate property. This determination was not appealed. It is undisputed that Heede purchased the Florida property on November 2, 1995 using money from this Dean Witter account for the down payment. It is further undisputed that Goulet has not lived in this property, has not made any mortgage payments on this property, and was unaware of even when the property was purchased. Goulet admitted that the only contact that he had with the Florida property was more than four months after its purchase following a vacation he took with Heede. At that time, Heede showed him the home, and he performed some minor repairs to the property while he was there.

Other than the post-vacation visit to the Florida property by Goulet over four months after Heede left Tennessee and his signature on the mortgage, Goulet presented no evidence that the parties intended this property to be marital. Furthermore, there is overwhelming evidence that Heede intended this property to be her separate property and treated it as such.

She purchased this property using her separate funds; it was thus "acquired in exchange for property acquired before the marriage." She moved to Florida alone and lived in the property for more than four months before Goulet even visited, and even after this visit, Goulet admits that the parties only spoke once and did not speak again for approximately three years. Further, the property was titled in her name alone, and, although Goulet did sign the mortgage, it is undisputed that Florida law requires a wife purchasing property to obtain the signature of her husband on these documents. The judge saw both parties testify and determined Heede's testimony to be more credible. When we review her testimony in connection with the other evidence presented, we find that the evidence does not preponderate against the judge's determination, and we must uphold the judge's decision to classify this property as separate property.

ALLOCATION OF THE BALANCE OF THE SECOND MORTGAGE

In December 1995 Goulet took out a second mortgage on the Tennessee home in the amount of $11,125.00 and paid a total of $11,500.00 over to Heede. The trial judge found the balance of this loan to be Goulet's personal debt, determining that the money was given to Heede in exchange for household furnishings and personal property left at the Tennessee residence after she moved to Florida.

In Tennessee, a distinction is made between marital and separate debts, just as a distinction is made between marital and separate property. *See McCaffey v. McCaffey*, 775 S.W.2d 618, 623 (Tenn. Ct. App. 1989). "Marital debts are those debts incurred during the marriage for the joint benefit of the parties, or those directly traceable to the acquisition of marital property." *Mandelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989) (citations omitted). Further, "[t]rial courts have the authority to apportion marital debts in the same way they divide the marital estate." *McCaffey*, 775 S.W.2d at 625.

Once again, we have a "he said, she said" situation wherein the court determined that Heede's testimony was more credible, and the evidence does not preponderate against this determination. Goulet claims that $11,500.00 was paid to Heede as part of the down payment on

the Florida residence and that most of that money came from the second mortgage on the Tennessee residence. However, the facts do not support this assertion as Heede purchased the property a month and a half prior to being given this money by Goulet. Further, Heede never signed the second mortgage. Goulet signed these documents as her attorney in fact, but no evidence or testimony was presented showing that she gave him permission or authority to act as her attorney in fact. Although $11,500.00, an amount close to the amount of the second mortgage, was paid to Heede in December 1995, Heede testified that she left over $15,000.00 worth of marital and separate property at the home in Tennessee when she moved out in November of 1995, which remains the property of Mr. Goulet, taking with her only a few items of personal property and $1,200.00 worth of marital property. As such, the evidence does not preponderate against the judge's determination that this second mortgage is Goulet's debt alone taken out for his benefit in order to purchase Heede's personal property left at the Tennessee home.

The judgment of the trial court is in all respects affirmed with costs assessed to Appellant. The case is remanded to the trial court for such further proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE