IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2000 Session

# MARTHA BOWEN LANGSCHMIDT v. CARL H. LANGSCHMIDT

**An Appeal from the Circuit Court for Shelby County**
**No. 155250 R.D.    Russell Lee Moore, Jr., Special Judge**

---

**No. W1999-00434-COA-R3-CV - Filed May 1, 2001**

---

This is a divorce case. The trial court held that the increase in the value of certain assets owned by the husband prior to the marriage, including Individual Retirement Accounts ("IRAs"), was marital property and equitably divided it. The trial court also awarded the wife a portion of her attorney's fees as alimony. The husband appeals. We affirm in part and reverse in part, holding that the trial court erred when in classifying the increase in value of the husband's non-IRA assets to be marital property when there was no proof that the wife substantially contributed to the preservation or appreciation of the property. We affirm the trial court's classification of increases in the husband's IRAs as marital property, and its equitable division of the marital property. We reverse as to the award to the wife of a portion of her attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., joined. W. FRANK CRAWFORD, P.J., W.S., filed a separate opinion concurring in part and dissenting in part.

Kathy Laughter Laizure, Roscoe A. Feild, Memphis, Tennessee, for the appellant, Carl H. Langschmidt.

John J. Heflin, III, Kenneth P. Jones, Memphis, Tennessee, for the appellee, Martha Bowen Langschmidt.

## OPINION

In this divorce case, Defendant/Appellant Carl H. Langschmidt ("Husband") and Plaintiff/Appellee Martha Bowen Langschmidt ("Wife") were married on September 26, 1992. This was a second marriage for both parties; Wife's previous marriage ended in divorce in 1990, the same year that Husband's first wife died. At the time of the marriage, Wife was forty-four years old and had two teenage sons from her previous marriage, and Husband was sixty-one years old and had no

children. After marrying Husband, Wife sold her home and moved with her two teenage sons into Husband's home. Soon after the marriage, however, serious problems developed in the relationship. On July 25, 1996, Wife moved out of the marital home after a heated argument.

On April 4, 1997, Wife filed a complaint for divorce citing irreconcilable differences. Husband filed an answer, admitting irreconcilable differences. Both parties later filed pleadings alleging that the other had engaged in inappropriate marital conduct.

The trial was held on December 14, 1998, and January 14, 1999. At trial, Wife testified that, prior to marrying Husband, she worked full-time as a school teacher. She stated that she quit her job and willingly became a homemaker at Husband's request. Wife testified that she told Husband prior to their marriage that she was very involved with the upbringing of her two sons and that Husband assured her that there would be no conflict between him and the two boys. Wife testified that she and Husband often talked about their future and how they would provide for themselves. She said that before they married, Husband showed her a list of his assets totaling over $1.2 million, not including the value of his home, to demonstrate that he could take care of their needs for the rest of their lives.

At the time of the marriage, the value of Wife's assets was $95,880.07, including $67,622.92 equity in her home, $17,804.89 in an Individual Retirement Account ("IRA"), and $10,452.26 in a savings account. Wife stated that during the marriage, she deposited her monthly child support checks from her ex-husband into the parties' joint account. During the marriage, Wife worked part-time, a few hours a month, at a clothing store and occasionally deposited her paycheck into the joint account, although she typically used her paycheck to buy clothing or gifts. The value of Wife's IRA at the time of divorce was $24,669.00. At the time of trial, Wife worked full-time teaching at a private school, earning between $24,000 and $25,000 per year.

Wife testified extensively about her efforts in remodeling Husband's house, and asserted that Husband commented favorably on the changes she made. Wife testified that she planned and cooked most of the meals, did the shopping, arranged for repairs and maintenance to the home, and paid all of the household bills out of the parties' joint account. Wife also did cleaning and laundry, but she had help from a maid two days a week. Wife testified that she and Husband entertained friends, family, and business associates at their home on a regular basis, at least twice a month.

Wife said that problems arose between the parties about six months after they married. Wife testified that Husband frequently criticized her parenting, favored one son over the other, made crude remarks in front of friends, criticized her family, used foul language in the presence of her sons, and drank alcohol excessively. Husband admitted some of the behavior to which Wife testified, expressed frustration at Wife's lack of discipline of her sons, and explained that some of his comments were intended to be only teasing, not mean.

Husband testified extensively regarding his income and the value of his financial assets. He admitted that in September 1992, he gave Wife a list of his assets showing a total value of $1.2

million, not including the value of his home. Husband accumulated these assets during many years of practicing law, and he testified that he intended to cut back on his law practice during the marriage and move gradually into retirement. As of the date of trial, Husband had a part-time working arrangement with his law firm that enabled him to draw full Social Security benefits. During the marriage, however, Husband continued to earn a substantial income. Typically, Husband would deposit $1,750 of his earnings every two weeks into the parties' joint account so that Wife could pay their marital expenses. He deposited his quarterly earnings into his separate checking account or his separate money market account. However, Husband maintained that he spent all of these earnings on marital expenses, and that he regularly used income from his savings and stock accounts to pay for marital expenses because the parties' standard of living often exceeded his earnings. Husband admitted that he made contributions from his earnings into a 401(K) account that he later rolled into one of his IRAs. The record indicates that Husband contributed $30,327.30 of marital income, along with $36,974.00 of his separate property, to his 401(k) plan, which was then transferred to one of his IRAs.

After hearing all the evidence, the trial judge filed an extensive Memorandum Opinion. An excerpt of the opinion appears as follows:

> It is the duty of the Court to first classify property as being marital or separate property and then to make an equitable distribution of all marital property. It is clear that the appreciation of any pension or retirement type accounts would be classified as marital property, and that an equitable division should be made of such property. . . . The combined value of [Mr. Langschmidt's] Raymond James IRA account and the JC Bradford [IRA] account as of September 1992 was $420,615.00. The value of Mrs. Langschmidt's IRA was $17,804.00. The combined value of the Raymond James IRA and the JC Bradford IRA as of November 30, 1998, was $947,401.00 showing an appreciation during the marriage of $526,786.00. The value of Mrs. Langschmidt's IRA as of November 30, 1998, was $24,669.00 showing an appreciation during the marriage of $6,895.00. Equitable division of the Raymond James and JC Bradford accounts would be an equal division of the appreciation on said accounts. Mr. Langschmidt would be entitled to a credit of $3,447.50 for the increase in Mrs. Langschmidt's IRA. The Court hereby awards the sum of $225,893.50 from the Raymond James IRA to Mrs. Langschmidt. The Court awards the sum of $37,499.50 from the JC Bradford IRA to Mrs. Langschmidt. Mrs. Langschmidt is also awarded her IRA account. . . . .

> There was a net appreciation in value of [non-IRA assets acquired by Mr. Langschmidt before the marriage] of [$171,628.00]. To determine whether the appreciation in value . . . would be separate property or marital property, the Court must look to T.C.A. § 36-4-121 and consider whether or not Mrs. Langschmidt's contributions either directly or indirectly would warrant the Court in classifying this property as marital property and equitably dividing any such appreciation. The Court finds that when the parties married, Mrs. Langschmidt was expected to be a

-3-

homemaker. It was her duty to be responsible for the care and maintenance of the home along with other duties that a non-employed spouse would have. . . . The Court finds that the duration of the marriage was approximately six years and consequently, relatively short. . . . Mrs. Langschmidt's earning capacity is limited to approximately $25,000.00 per year and without a division of appreciation and assets, she will have very little estate. Mr. Langschmidt's retirement has limited his earnings to $30,000.00 per year, but he will continue to have passive income well in excess of his earned income. Mrs. Langschmidt's ability to acquire future capital assets and income is very limited where Mr. Langschmidt's ability to acquire capital assets and income is much greater. The appreciation of the values of the [non-IRA property] was entirely market driven. The Court, therefore, finds that the non-monetary contribution of Mrs. Langschmidt in this case equals the contribution of Mr. Langschmidt to the appreciation of the subject property. The Court, therefore, classifies the [appreciation of the non-IRA property] as marital property and awards one-half of the net appreciation . . . to Mrs. Langschmidt. . . . .

It is clear to the Court that during the marriage of the parties, Mr. Langschmidt's conduct at best would be described as overbearing. At worst it could be described as tyrannical. Mr. Langschmidt's sister best described it when she stated, "people don't usually disagree with my brother." Mr. Langschmidt's language was intolerable. Mrs. Langschmidt endured the marriage as long as possible and thereafter left. The Court finds that Mr. Langschmidt is guilty of inappropriate marital conduct and awards an absolute divorce to Mrs. Langschmidt.

The standard of living of the parties during their marriage, along with the need of Mrs. Langschmidt for income and along with her inability to increase her earnings or her assets as Mr. Langschmidt might and along with the issue of fault, this case [sic] would have ordinarily been a case where periodic alimony would be applicable at least on some rehabilitative basis. Because of the short duration of the marriage and because this type of monetary award would better be handled through the division of the appreciation of marital assets . . . , the Court does not feel that an award for periodic alimony is appropriate. It is, however, disturbing that Mr. Langschmidt would take the position that he took in this case especially with issue of retirement benefits when the law is so clear that any appreciation in these benefits would be classified as martial [sic] property. The Court does feel that an award of alimony for attorney's fees is appropriate. . . . After considering the matter in its entirety, the Court feels that Mr. Langschmidt should be responsible for two-thirds (2/3) of the attorney's fees incurred by Mrs. Langschmidt. Mr. Langschmidt, however, shall be given a credit of $6,700.00 against these attorney fees for the unusual withdrawals in the parties' joint checking account after their separation.

\* \* \*

The trial judge attached tables showing the agreed values that the parties assigned to Husband's assets. Exhibit 1 to the trial court's Memorandum Opinion shows as follows:

EXHIBIT 1

RETIREMENT ACCOUNTS

| ASSETS | Gross Market Value As of 9/92 | Gross Market Value As of 11/30/98 | Appreciation |
|---|---|---|---|
| Investment Accounts: | | | |
| Raymond James-IRA | $381,232.00 | $833,019.00 | $451,787.00 |
| JC Bradford-IRA | $39,383.00 | $114,382.00 | $74,999.00 |
| Mrs. Langschmidt's IRA | $17,804.00 | $24,699.00 | $6,895.00 |
| TOTALS | $438,419.00 | $972,100.00 | $533,681.00 |

Exhibit 2 to the Memorandum Opinion shows as follows:

EXHIBIT 2

Accounts/Property in name of Carl H. Langschmidt, Jr.

Values Compared as of Dates of Marriage and November 30, 1998

| Investment Portfolio | September '92 | November '98 | Appreciation |
|---|---|---|---|
| NBC Money Market | $135,200.00 | $114,971.00 | ($20,229.00) |
| CD | $52,755.00 | $29,700.00 | ($23,055.00) |
| Bonds | $50,000.00 | | ($50,000.00) |
| New England Life (total cash value) | $12,995.00 | $21,990.00 | $8,995.00 |
| NBC Checking | | $2,289.00 | $2,289.00 |
| Raymond James-Regular | $55,191.00 | $79,918.00 | $24,727.00 |
| JC Bradford-Regular | | $9,911.00 | $9,911.00 |

| | | | |
|---|---|---|---|
| Morrison Restaurant-Split into: | $478,125.00 | | |
| a. 27,000 Ruby Tuesday @ 18.6875 | | $504,225.00 | |
| b. 9,000 Morrison Health @18.125 | | $163,125.00 | $189,225.00 |
| First American Bank | $3,740.00 | | ($3,740.00) |
| Autozone (1480 shares @ 30.625) | $24,420.00 | $45,325.00 | $20,905.00 |
| Insituform (200 shares @ $13) | | $2,600.00 | $2,600.00 |
| Blackrock Target Trust | | $10,000.00 | $10,000.00 |
| TOTAL: | $812,426.00 | $984,054.00 | $171,628.00 |

Husband now appeals the decision of the trial court. In his appeal, Husband does not dispute the values that the trial court assigned to his accounts, nor does he appeal the trial court's factual findings regarding the grounds for divorce. He contends on appeal that the trial court erred as a matter of law in classifying as marital property the increases in his stock and savings accounts, including his IRAs, that occurred during the marriage. He argues that the trial court should have classified the increases as his separate property because he owned the accounts prior to the marriage, did not contribute any marital income to them, and because Wife did not substantially contribute in any way to the appreciation of these accounts. In the alternative, Husband argues that the trial court's division of the marital property, fifty percent to Wife and fifty percent to him, was inequitable in light of the short duration of their marriage. Finally, Husband contends that the trial court erred by awarding Wife two-thirds (2/3) of her attorney's fees as alimony because Wife received a substantial amount of property in the divorce and is in a much better position financially than she was prior to the marriage.

In a divorce in which the division of property is at issue, the trial court should first classify the property as either marital or separate, and then make an equitable division of the marital property. *See Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The trial court's classification and division of property is reviewed *de novo* with a presumption that the trial court's factual findings are correct. *See Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997). The trial court's division of property is generally altered on appeal only if the trial court misapplies the law or if the

evidence preponderates against the trial court's factual findings. *See Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994).

We address first Husband's non-IRA property, then his IRA accounts. As to the non-IRA assets, the trial court classified the $171,628.00 increase in the value of these assets to be marital property. In its equitable division of this property, the trial court awarded half of the increase in value to Wife.

The classification of property as either marital or separate is governed by Tennessee Code Annotated § 36-4-121(b). This statute states:

> "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(B)(1996). Section 36-4-121(b)(1)(D) states that " 'substantial contribution' may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager. . . ." The determination of whether a spouse has substantially contributed to the preservation and appreciation of the other spouse's separate property is a question of fact for the trial court. *See Cohen v. Cohen*, 937 S.W.2d 823, 833 (Tenn. 1996); *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). This comports with the wide discretion afforded to the trial court in its classification of property in a divorce case. *See Erwin v. Erwin*, No. W1998-00801-COA-R3-CV, 2000 WL 987339, at **5 (Tenn. Ct. App. June 26, 2000) (citing *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998); *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996)).

In *Harrison v. Harrison*, 912 S.W.2d 124, 127 (Tenn. 1995), the Tennessee Supreme Court stated that "[t]he statute does not permit the conclusion that *any* increase in value during marriage constitutes marital property. The increase in value constitutes marital property only when the spouse has substantially contributed to its preservation and appreciation." In *Wright-Miller v. Miller*, 984 S.W.2d 936, 943-44 (Tenn. Ct. App. 1998), this Court stated that the non-owning spouse's contribution "must be real and significant in order to be substantial." *Wade v. Wade*, 897 S.W.2d 702, 714 (Tenn. Ct. App. 1994), observes that "[s]ubstantial contributions . . . need not be monetarily commensurate with the appreciation in the property's value during the marriage. . . Likewise, the contributions need not be directly related to the specific property involved. They are substantial if they enabled the spouse who owns the property to retain it during the marriage." *Wade*, 897 S.W.2d at 714 (quoting *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 623 (Tenn. Ct. App. 1989)).

In this case, the trial judge found that Wife had made contributions to the marriage in her role as a homemaker, noting that Wife was responsible for the care and maintenance of the marital home and that she had the duties one would expect a non-employed spouse to have. The trial judge

remarked that the growth of Husband's separate non-IRA assets were "entirely market driven." Based on this, the trial court found that "the non-monetary contribution of Mrs. Langschmidt in this case equals the contribution of Mr. Langschmidt to the appreciation of the subject property."

However, as stated in *Harrison* and *Wade*, the increase in value of Husband's separate property is considered martial property only if Wife substantially contributed to its preservation and appreciation, or enabled Husband to retain the property during the marriage. *Harrison*, 912 S.W.2d at 127; *Wade*, 897 S.W.2d at 714. In *Harrison*, the wife claimed an interest in the appreciation of a real estate tract held separately by her husband prior to marriage. The value of the real estate tract increased from $7,000 at the time of the marriage to $1,361,750 at the time of divorce thirty-six years later. *See Harrison*, 912 S.W.2d at 125. The cause of the large increase was the construction of an interstate highway across the property. The wife had helped the husband with the care of cattle on the property and payments on an indebtedness secured by a deed of trust on the property had been made from marital funds. *See id.* at 126. Nevertheless, the Tennessee Supreme Court, reversing the Court of Appeals, held that the increase in value was husband's separate property because "the evidence does not show that the wife substantially contributed to the preservation or appreciation of the property." *See id.* at 127. *See also Stoner v. Stoner*, No. W2000-01230-COA-R3-CV, 2001 WL 43211, at *4 (Tenn. Ct. App. Jan. 18, 2001) (holding that since the wife did not substantially contribute to the preservation and appreciation of the separate property, the increase in value of the separate property was not marital property).

In this case, while Wife contributed to the marriage as a whole, there is no evidence that Wife substantially contributed to the preservation or appreciation of Husband's non-IRA accounts, or that she enabled Husband to retain the accounts during the marriage. Consequently, we reverse the trial court's decision to the extent that it classifies the increase in value of Husband's non-IRA assets as marital property and grants Wife an equitable share of that increase in value.

Husband argues next that the trial court erred in classifying the increase in value of his IRAs as marital property. We refer again to Tennessee Code Annotated § 36-4-121(b)(1)(B), which states that marital property includes "the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage." Under this provision of the statute, the increase in value of retirement benefits is considered marital property regardless of whether the non-owner spouse made a substantial contribution to the appreciation or preservation of the retirement benefits. The trial court classified the increase in value of Husband's IRAs as marital property. Husband vigorously argues that the increase in value should not be considered marital property because the legislature did not intend to include IRAs in the exception for pension and retirement benefits. He contends that the legislature intended to include only benefits that related to employment because they represent deferred marital income that could have been used to purchase marital assets. He argues that the statutory provision on retirement benefits was not intended to include the IRAs that were held separately by one spouse before the marriage.

The primary question is whether an IRA is a "retirement" benefit within the meaning of Tennessee Code Annotated § 36-4-121(b)(1)(B). Prior Tennessee cases involving this issue do not

analyze it in depth.  Most of the prior decisions indicate that an individual retirement account, or IRA, is a "retirement" benefit within the meaning of the statute, and thus any increase in its value is automatically marital property. *See McKee v. McKee*, No. M1997-00204-COA-R3-CV, 2000 WL 666363, at \*\*5 (Tenn. Ct. App. May 23, 2000) (stating that an $11,960 increase in an IRA held separately by one spouse before the marriage, and which did not include marital contributions, was marital property); *Mahler v. Mahler*, No. 01A01-9507-CH-00303, 22189, 1997 WL 187130, at \*3 (Tenn. Ct. App. April 18, 1997) (holding that a $73,267 increase in spouse's IRA was marital property even without evidence of a substantial contribution by the other spouse); *Mayfield v. Mayfield*, No. 01A01-9611-CV-00501,  1997 WL 210826, at \*8 (Tenn. Ct. App. April 30, 1997)(increase in value of husband's IRA was marital property); *Batson*, 769 S.W.2d at 856-57 (holding that increases in husband's Keogh plan and IRA, which were funded with marital income, should be classified as marital property).

A somewhat unclear result on this issue was reached in *Miller v. Miller*, No. M1999-00724-COA-R3-CV, 2000 WL 1231378, at \*5 (Tenn. Ct. App. Aug. 31, 2000).  *Miller* involved a "peculiar" set of facts.  The parties lived "virtually separate lives" for the last nine years of their eleven year marriage, and that although they lived together, they generally "pursued their own individual ways."  *See Miller*, 2000 WL 1231378 at \*5.  The trial court found that during the marriage, the parties kept their finances separate, maintained separate accounts, paid separate bills, and kept separate retirement and 401(K) accounts.  *See id.* at \*1.  The husband in *Miller* had two IRAs.  The first had been funded during the marriage with a roll-over of $34,259.00 from the husband's separately held investment fund, an investment fund which was not a retirement account.  *See id.* at \*5.  This IRA was valued at $72,910.00 at the time of divorce, leaving an increase in value of $38,651.00 during the marriage.  Noting that the non-retirement investment account and its increase in value was the husband's separate property, this Court held without elaboration that "thus the roll-over to the . . . IRA constitutes Husband's separate property."  *Id.* at \*5.  The increase in value of this IRA was not addressed.  With respect to the other IRA, which the husband had partially funded with $38,300.00 in contributions from his 401(K) plan, this Court held that "the contributions of the 401(K) plan constitute marital property."  *See id.*   Thus, in *Miller*, as to the IRA that was deemed the husband's separate property, this Court held that the "roll-over," that is, the amount put into the IRA from the husband's separate investment account, was separate property.  Whether the IRA was considered a retirement account and whether the increase in value was deemed marital property was not addressed on appeal.

In this case, we find that prior Tennessee decisions involving individual retirement accounts, that is, IRAs, have, where the issue is addressed on appeal, indicated that such individual retirement accounts should be treated as "retirement" benefits within the meaning of Tennessee Code Annotated § 36-4-121 (b)(1)(B).  Husband notes that while this appeal was pending, the General Assembly amended Section 36-4-121(b)(1)(B) to read:

> "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and

appreciation, and the value of vested *and unvested* pension, *vested and unvested stock option rights*, retirement or other fringe benefit rights *relating to employment* that occurred during the period of the marriage.

*See* 2000 Tenn. Pub. Acts 713 (emphasis on language added by amendment). We apply the statutory language as it existed at the time of divorce, because the amendment to the statute is presumed to operate prospectively unless the legislature clearly indicates otherwise. *See Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998). Husband argues that the amendment indicates the legislature's original intent to exclude from section 36-4-121(b)(1)(B) retirement accounts that are not related to the owner spouse's employment. However, when the legislature makes a change in the language of a statute, a presumption arises that the legislature intended to depart from existing law. *See Dunn v. Hackett*, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992). Prior caselaw does not distinguish between IRAs associated with the employment of the owner spouse and those which are not. Therefore, we do not interpret section 36-4-12(b)(1)(B), as it existed at the time of the divorce, to apply exclusively to retirement accounts related to the owner spouse's employment. The dissent argues that IRAs should be treated simply as any other investment account, with the increase in value being marital property only if the nonowner spouse contributed to the asset's preservation or appreciation. However, an IRA is, afterall, an "individual retirement account" even if the funds in it can at times be accessed for other reasons. Prior decisions of this Court indicate that IRAs are retirement benefits under the statute, and we decline to depart from this. Under these circumstances, we hold that Husband's IRAs should be deemed "retirement" benefits under Tennessee Code Annotated § 36-4-121(b)(1)(B), and the increase in value during the marriage should be considered marital property regardless of whether Wife substantially contributed to the preservation or appreciation of the IRAs. Accordingly, we affirm the decision of the trial court to the extent that it classifies as marital property the appreciation of $526,786.00 in Husband's separately held IRAs.

In the alternative, Husband argues that if the trial court was correct to classify the appreciation in his IRAs as marital property, then the trial court's division of the marital property was not equitable. The trial judge found that in this case, an equitable division of the marital estate was an equal one. The factors to be considered in dividing the marital estate are set out in Tennessee Code Annotated § 36-4-121(c):

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

-10-

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

An equitable division of the marital estate is not necessarily an equal one. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). The trial judge has a great deal of discretion in dividing the marital estate, and that division should be accorded great weight by the appellate court. *See Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

On appeal, Husband rightly notes that this was a marriage of short duration. He concludes from this that an equal division of the marital estate is not an equitable one. He argues that in a marriage of short duration, the trial court should seek to place the parties in the same position had they been if the marriage had not taken place. *See Batson*, 769 S.W.2d at 859. In this case, the trial court considered the duration of the marriage, but considered the other statutory factors as well. The trial court's memorandum opinion closely tracks most, if not all, of the statutory factors, including the age of the parties, their health, earning capacities, respective estates, and their respective contributions to the marriage. Under these circumstances, we do not find that the trial court erred in dividing the marital estate equally between the parties.[1] We remand for the trial court to divide the marital estate in light of our prior modification, removing from the marital estate the increase in value of Husband's separate non-IRA assets.

Finally, Husband argues that the trial court erred in awarding Wife a portion of her attorney's fees as alimony. The trial court awarded Wife $24,774.06, which represents two-thirds of her

---

[1]The trial court considered awarding alimony, noting that "this case would ordinarily have been a case where periodic alimony would be applicable. . . ." However, in light of the division of marital property, the trial court declined to award alimony.

attorney's fees, less $6,700 for "unusual withdrawals" from the parties joint account during separation. Trial courts have discretion to award attorney's fees as alimony in a divorce proceeding, and such an award should not be disturbed on appeal unless the evidence preponderates against it. *See Batson*, 769 S.W.2d at 862.

In this case, the trial court stated that its award of attorney's fees was based largely, though not exclusively, on Husband's persistent argument that his IRA assets were not "retirement benefits" under the statute:

> It is . . . disturbing that Mr. Langschmidt would take the position that he took in this case especially with [the] issue of retirement benefits when the law is so clear that any appreciation in these benefits would be classified as marital property. The Court does feel that an award of alimony for attorney's fees is appropriate. Again, Mrs. Langschmidt will have a difficult time increasing her holdings, and Mr. Langschmidt is in a better position to pay these attorney's fees than Mrs. Langschmidt. His position in this case created the need for much of the attorney's fees that such an award should be made, and the Court has found the issue of fault against Mr. Langschmidt. The Court must, however, look at Mrs. Langschmidt['s'] ability to pay in light of the award in this case. After considering the matter in its entirety, the Court feels that Mr. Langschmidt should be responsible for two-thirds (2/3) of the attorney's fees incurred by Mrs. Langschmidt. Mr Langschmidt, however, shall be given a credit of $6,700.00 against these attorney fees for the unusual withdrawals in the parties's joint checking account after their separation.

However, as evidenced by the dissent in this case, the issue regarding whether the IRA accounts should be considered "retirement benefits" is a substantial issue which has not heretofore been analyzed in depth in any Tennessee appellate decision. Consequently, Husband should not be faulted for arguing his position zealously. While Husband was found at fault in the divorce, Wife received substantial assets in the division of marital property. Under these circumstances, we must conclude that an award of attorney's fees to Wife is not appropriate. The trial court's decision that Husband should be responsible for two-thirds of Wife's attorney's fees in hereby reversed. Wife, however, shall retain the $6,700.00 withdrawn from the parties' joint checking account after their separation. Wife's request for attorney's fees for this appeal is denied.

In sum, we find that the trial court erred in classifying the increase in value of Husband's separately-held, non-IRA property as marital property, because there is no evidence that Wife substantially contributed to the appreciation or preservation of the property. We affirm the trial court's classification of the increases in value of Husband's IRAs as marital property. We affirm the trial court's overall equal division of the marital property, with the modification of removing from the marital estate the increase in value of Husband's separate non-IRA assets. The case is remanded for recalculation of the division of the marital estate in light of this modification. We reverse the trial court's award of attorney's fees to Wife, but hold that Wife may retain the $6,700.00

withdrawn from the parties' joint checking account after the separation.  We deny Wife's request for attorney's fees on appeal.

The decision of the trial court is affirmed in part, reversed in part and remanded as set forth above.  Costs of this appeal are taxed equally to appellant, Carl H. Langschmidt, and his surety, and appellee, Martha Bowen Langschmidt, and her surety, for which execution may issue if necessary.

 

 

 

 

                                             _____

                                             HOLLY KIRBY LILLARD, JUDGE