# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 18, 2000 Session

## RHONDA GALE PHILLIPS MOFFITT v. PAUL SIDNEY MOFFITT

**A Direct Appeal from the Chancery Court for Henderson County**
**No. 10438     The Honorable Joe C. Morris, Chancellor**

---

### No. W1999-02403-COA-R3-CV - Filed November 13, 2000

---

In this divorce case, Husband appeals the trial court's final decree as it deals with the division of marital property, the division of marital debt (including crediting Wife for monies spent prior to the sale of the marital home), and child support arrearages.  We affirm.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBYLILLARD, J., joined.

Lloyd R. Tatum, Henderson, For Appellant, Paul Sidney Moffitt

Joe H. Byrd, Jr., Jackson, For Appellee, Rhonda Gale Phillips Moffitt

### OPINION

Paul Sidney Moffitt, defendant/appellant ("Husband"), and Rhonda Gale Moffitt, plaintiff/appellee ("Wife"), were married on September 28, 1972, in Florence, Alabama.  There are two children of the marriage, Brandon and Phillip.  Brandon was a minor at the time that Wife filed a petition for divorce, but neither child remained a minor at the time of trial.  Wife filed a complaint for an absolute divorce against Husband on April 11, 1996, in the Chancery Court of Henderson County, Tennessee, alleging irreconcilable differences.  Husband filed an answer and counterclaim on June 20, 1996.  A trial was held on August 27, 1999.  At the time of trial, Wife received a gross monthly income from her employer, Volvo Penta, of approximately $3,583.33, and Husband received a gross monthly income from his employer, National Industrial Services, Inc., of approximately $2,773.33 (not including overtime which he receives from the same source). On October 1, 1999, the trial court entered a final decree of divorce granting an absolute divorce to the parties pursuant to T.C.A. § 36-4-129 (b) and dividing marital property.  It is from this decree that Husband appeals, raising four issues as stated in his brief:

I. Whether the trial court erred in not deducting child support arrearages from plaintiff's award of marital property?

II. Whether the trial court erred in reimbursing plaintiff $6,167.33 for mortgage payments she made pending the divorce and in not crediting defendant with $25,000.00 of mortgage payments he made pending the divorce?

III. Whether the evidence preponderates against the trial court's division of property and debt?

IV. Whether the trial court erred in awarding appellee attorney fees?

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn. R. App. P. 13(d).

We begin by addressing issue I, whether the trial court erred in not deducting child support arrearages from Wife's award of marital property. Husband contends that Wife paid no child support to him in violation of a *pendente lite* order of February 20, 1997, requiring her to pay to him $409.00 per month until the parties minor child reached majority in December of 1997. Husband contends that Wife disregarded the order by paying child support directly to the minor child. Husband avers that at the time of trial, Wife was in arrears in child support in the amount of $2,863.00. On the other hand, Wife contends that for the first twelve months after she and Husband separated, she gave money directly to the parities' children pursuant to her agreement with Husband.

Wife contends that Husband failed to comply with Local Rules of Practice for the Chancery Court for Henderson County 34 and 41 requiring the filing of pretrial information. Wife asserts that due to such failure, neither the trial court nor Wife's counsel were aware that proof would be required as to the issue of child support *pentente lite* arrearages. In addition, Wife asserts that an order regarding payment of child support was adjudicated October 7, 1997, but not entered due to a failure on the part of Husband's then counsel to file the order. Wife contends that according to such order, for the first twelve months after Husband and Wife separated, she gave money directly to the parties' children pursuant to an agreement between the parties. Wife further contends that the trial court heard the testimony of both the Wife and Husband regarding child support and chose not to find validity in Husband's contention that he was owed child support in arrears.

The final decree is silent on this issue. The record contains a temporary child support order dated February 20, 1997, requiring Wife to pay $409.00 per month to Husband for child support. The order directs that payment shall be made one-half on the first of each month and one-half on the 15th of each month, and shall continue until Brandon reaches the age of eighteen or until this matter is finalized, which ever occurs first. However, there is evidence in the record that an agreement

existed between Husband and Wife regarding child support to be paid directly to the minor child. Wife testified at trial:

> Q:    Isn't it true you and he had an agreed order?  You paid him child support during the time you left for the minor child - - directly to the child?
>
> A:    To Brandon.  I bought him clothes and everything

At the March 11, 1999 hearing Wife testified:

> Q: Okay. The first twelve months - - You spoke about child support. Mr. Byrd asked you some questions about that.  The first year after you and Mr. Moffitt separated did you give your boys any money?
>
> A:    Yes, I did.
>
> Q:    Did you?
>
> A:    Yes, I did.
>
> Q:    Did you give Mr. Moffitt any money for them?
>
> A:    I give the money directly to my boys.
>
> Q:    Okay.
>
> A:    That was agreed upon between me and Mr. Moffitt.

Wife also testified at trial that she continued to pay child support to the youngest son, Brandon, past his eighteenth birthday in December of 1997, until his graduation from high school in May of 1998.

At trial, Husband states that the house payment was eight months in arrears at the time of the March 11, 1999 hearing[1], because Wife had not paid child support, causing him to be "so deep in debt where I couldn't pay these payments."  However, this is not the explanation that Husband provided for his inability to pay the mortgage on the marital home in his response to Wife's second

---

[1]    At the March 11, 1999 hearing Husband stated that he was unable to pay the monthly mortgage on the marital residence.  After the hearing, the trial court entered an order directing Husband to remove himself from the parties' residence and that the residence be placed for sale.  The order was silent on child support *pendente lite* arrearages.

petition for contempt and for possession of residence pending sale of the same filed on March 11, 1999. In that response, Husband states in pertinent part:

> Now having fully responded to the Petition filed herein against him the Respondent would state that the reason he has been unable to pay the January, February and March 1999 mortgage payments is that because he is a carpenter, his income is solely dependent upon the weather.

When asked about an agreement made by his then lawyer and subsequent consent order allowing Wife to pay child support directly to the parties son, Husband states:

> Q:   ...So now at some point, you reach a consent order. You didn't have to have a hearing on it. You reached a consent order where she agreed to pay chid support; did she not?
>
> A:   Two Weeks before her first court date, apparently her lawyer, Ms. Kibbe, didn't want her to come into court for not paying child support so she agreed. And weeks before this court date, we got a check.
>
> Q:   And that order, unlike all the orders that you misunderstood that we had to come in here and try, was entered by consent between those two lawyers; was it not?
>
> A:   (No response.)
>
> Q:   You don't know?
>
> A:   (No response.)

The silence in the final decree with regard to the alleged child support arrearages could indicate that the trial court did not find Husband's testimony creditable regarding the agreement and consent order allowing Wife to pay child support directly to the minor child of Husband.

> When the resolution of the issues in a case depends upon the credibility of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997); *see also McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 415 (Tenn.1995). The weight, faith, and credit to be given to any

witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997); *McCaleb*, 910 S.W.2d at 415. The trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses that contradicts the trial court's findings. *See Hawkins v. Ellis*, No. 02A01-9708-CH-00203, 1998 WL 704521, at * 4 (Tenn. Ct. App. Oct.12, 1998) (citing *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App.1990)).

*Brownyard v. Brownyard,* No. 02A01-9803-CH-00063, 1999 WL 418352, *7 (Tenn. Ct. App. June 22, 1999). Because Husband did not submit this issue as a contested issue[2] and because he failed to produce creditable evidence that there existed an arrearage of *pendente lite* child support, we find that the evidence does not preponderates against the trial court in not finding that Wife was in arrears in her child support payments. Therefore, we affirm the trial court in awarding no child support arrearages to Husband.

Husband's second issue is whether the trial court erred in reimbursing Wife $6,167.33 for her mortgage payments made pending the divorce and in not crediting Husband with $25,000.00 for mortgage payments he made pending the divorce. We find this issue is without merit. The trial court found that the total equity of the value of the home was $112,825.56 and awarded $67,721.04 to Husband and $45,104.52 to Wife. The trial court then deducted $11,308.26 from Husband's share of the equity and credited Wife with the same. In addition, the trial court deducted $6,167.33 from Husband's share for mortgage payments made to G.E. Capital Mortgage Services by Wife during Husband's occupancy of the marital residence and credited Wife for the same. Other deductions from Husband's share of equity were: $1,382.22 for expenditures by Wife for cleaning, maintenance, and improvements necessary for the sale of the marital residence; $1,133.21 for replacement costs of fixtures removed from marital residence by Husband in violation of March 11, 1999 order; and $1,858.28 for Wife's portion of attorney fees attributable to Husband's failure to pay mortgage for hearings held August 7, 1997, October 2, 1997, and March 11, 1999. The total amount deducted from Husband's share of the equity in the marital home and credited to Wife is $22, 049.30. This results in $34,363.48 awarded to Husband for his share of the equity in the marital home and $78,462.08 awarded to Wife for her share of equity in the marital home.

---

[2]     Wife filed a submission of pretrial information pursuant to local rules 3 4 and 4 1 in which the contested issues of this cause were listed. Such list did not include child support arrearages. Husband failed to file a submission of pretrial information and therefore stated no list of contested issues. Because Husband did not submit pretrial information and according to the record did not raise child support as a contested issue in any other pleading or pretrial hearing, Wife's counsel and the trial court were unaware the proof would be required as to the issue of child support *pendente lite* arrrearages.

Pursuant to the trial court's order dated September 4, 1997, Husband is required to pay the mortgage payments on the marital residence for the month of August of 1997 and for each month thereafter, "pending the further orders of this Court, and/or an agreement by the parties to the contrary." At that time, Husband occupied the marital residence. In Husband's response to the Second Petition For Contempt For Possession Of Residence Pending Sale Of Same, etc., filed March 11, 1999, he admits that he agreed to make the mortgage payments on the residential home. In the same response, in an affirmative defense and request for relief, Husband himself requests that the trial court make an equitable division of the parties' property and that Wife be given credit for the payments as required to bring the mortgage current.

In her pretrial information filed with the trial court, Wife submitted that she had paid $6,167.33 to G.E. Capital Mortgage Services during Husband's occupancy in the marital residence. The evidence does not preponderate against the trial court's award of credit in that amount to Wife in the division of marital property. In addition, we find nothing in the record to indicate that Wife received any credit for mortgage payments made while she occupied the house. Therefore, we find that the evidence does not preponderate against the trial court's award with regard to mortgage payments on the marital home.

Husband next contends that the trial court erred in the distribution of marital assets and marital debt. Husband contends that the marital residence sold for $126,600.00, leaving net proceeds of $62,511.80 which should be divided equitably between the parties with each party receiving approximately $31,250.00. In addition, Husband contests the valuation of a number of items of marital property by Wife, and asserts that the trial court erred in using her inflated values in valuating and dividing the marital property. Finally, Husband asserts that an award of $24,000.00 from Wife's father's estate was compensation to Wife for her services rendered to her parents during the course of parties' marriage. Husband contends that the trial court erred in classifying the award as Wife's separate property, and that pursuant to T.C.A. § 36-4-121 the award should have been classified as marital property and divided equitably between the parties.

Dividing a marital estate must begin with the classification of the property as either separate or marital property. *See McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn.Ct. App.1993). The definitions of "separate property" and "marital property" in T.C. A.§ 36-4-121(b) (1996) provide the guidance in classifying the property. After the property has been classified, the trial judge is to divide the marital property in an equitable manner. A division is not to be considered inequitable simply because each party did not receive a share of every piece of marital property, *see Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App.1994), or because it is not precisely equal. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn.1996); *and El lis v. Ellis,* 748 S.W.2d 424, 427 (Tenn.1988). Dividing a marital estate is not a mechanical procedure but rather is guided by a consideration of the factors in T.C.A.§ 36-4-121(c). Trial judges have wide latitude in fashioning an equitable division of marital property, *see Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn.1983); *Brown v. Brown,* 913 S.W.2d at 168, and appellate courts accord great weight to a trial judge's division of marital property. *See Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App.1996); *Edwards v. Edwards,* 501 S.W.2d 283, 288 (Tenn. Ct. App.1973). Consequently, we ordinarily defer to the trial

judge's decision regarding the division of property unless it is inconsistent with the factors in T.C.A. § 36-4-121 (c) or is not supported by a preponderance of the evidence. *See Kinard v. Kinard,* 986 S.W.2d 220, 230- 31 (Tenn. Ct. App. 1998); *Brown v. Brown,* 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App.1989); *and Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App.1983).

The valuation of a marital asset is a fact driven inquiry. *Kinard v. Kinard,* 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). The value of marital assets are to be determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App.1987). If there is conflicting evidence of value, the trial judge may assign a value within the range of values supported by evidence. *Ray v. Ray,* 916 S.W.2d 469, 470 (Tenn. Ct. App.1995). On appeal, the trial judge's factual findings are presumed correct unless the evidence preponderates against them. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App.1996).

T.C.A. § 36-4-121 defines separate property as including "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." T.C.A. § 36-4-121 (b) (2) (D) (1996).

The trial court adopted the valuations supplied by Wife in her pretrial submissions. Husband made no such submission, however, he challenges values given by Wife on a number of items and asserts that Wife's valuations were based on items when new, without allowance for depreciation. At trial Wife testified that she did take into account age and depreciation when valuating property.

We believe this to be a credibility issue, and therefore defer to the judgment of the trial court, who had "the opportunity to observe the witnesses in their manner and demeanor while testifying" and who "is in a far better position than this Court to decide those issues." *See Brownyard, supra.* The values assigned by the trial court are within the range supported be the evidence. Therefore we find that evidence does not preponderate against the trial court's valuation of property.

With regard to the trial court's classification of the award received from Wife's father's estate as separate property belonging to Wife, the evidence does not preponderate against the trial court's finding that Wife's award from her father's estate was not payment for services. Accordingly, we affirm the trial court with regard to the valuation of marital assets and the division thereof.

Husband makes no specific contention concerning the assignment of marital debt. The trial court found that the marital debt consisted $4,535.91 owed to Household Bank Credit Card and assigned $2,885.91 of that amount to Husband, and the remaining $1,650.00 to Wife. In so assigning the marital debt, the trial court stated that the disposition of the debt was "in conjunction with the benefit derived by the parties respectively for the purchases made in accordance with the incurrence of same."

Marital debt should be equitably divided between the parties. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn. Ct. App.1995); *Mondelli v. Howard,* 780 S.W.2d 769, 773 (Tenn. Ct. App.1989). "When practicable, the debts should follow the assets they purchased." *Id.*

The evidence does not preponderate against the trial court's division of marital debt. Consequently, we affirm the trial court's assignment of marital debt.

Husband's final issue addresses whether the trial court erred in awarding Wife $2,500.00 in attorney's fees at trial and $1,858.28 for attorneys fees for the March 11, 1999 proceeding. Wife asserts that the trial court did not err in awarding Wife a portion of her attorneys fee and requests an award of her attorneys fees on appeal.

An award of attorney fees constitutes alimony *in solido*. *Herrera v. Herrera,* 944 S.W.2d at 390; *Cranford v. Cranford*, 772 S.W.2d 48, 52 (Tenn. Ct. App.1989). The decision whether or not to award attorneys fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *see* Rule 13(d) Tenn. R.App. P. As with any alimony award, in deciding whether to award attorneys fees as alimony *in solido*, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d). A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys fees and expenses. *Umstot v. Umstot* 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *and Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984).

> These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); *Ingram v. Ingram,* 721 S.W.2d at 264, or would be required to deplete his or her resources in order to pay these expenses. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn. Ct. App 1980).

*Brown v. Brown,* 913 S.W.2d 163, 170.(Tenn. Ct. App. 1994). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorneys fees. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); *Palmer v. Palmer,* 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); *Ligon v. Ligon,* 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

In awarding Wife a portion of her attorney's fee, the trial court stated in the final decree:

> 8. The Court furthermore finds that the Wife incurred in costs and attorney's fees, the following sums, to-date: $2,442,60 paid to Ms. Katheryn S. Kibbe, Attorney at Law; $2,000.00 paid to Mr. Joe H. Byrd, Jr., Attorney at Law; and $300.00 paid to Weatherly Real Estate Appraisals. The Balance of Mr. Byrd's attorney's fees, (excluding appearances on the 7th day of August, 1997, to compel the Defendant's payment of mortgage payments which accrued during his occupancy of the parties' residence, on the 2nd day of October, 1997,

to compel the Defendant's compliance with the prior orders of this Court and the and on the 11th day of March, 1999, in the order to present a third Petition for Contempt, which total $1,858.28), are in the total sum of $5244.50. The above referenced total sum of attorney fees and costs incurred by the Wife, (excluding attorney fees expended in connection with the above described contempt proceedings), is in the sum of $9,987.10, of which the Husband is ordered to pay $2,2500.00 as alimony *is solido*. The costs of this cause shall be assessed against the Husband.

Considering this and the record as a whole, we do not feel that the trial court abused its discretion in awarding Wife a portion of her attorney's fees. Each party shall be responsible for their attorney fees on appeal.

Accordingly, the judgment of the trial court is affirmed. Costs of the appeal are assessed against the appellant, Paul Sidney Moffitt, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.