IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2001

**ROGER DALE THOMAS v. GAIL THOMAS**

**Appeal from the Chancery Court for Giles County**
**No. 9631     Jim T. Hamilton, Judge**

---

**No. M2001-01226-COA-R3-CV - Filed August 2, 2002**

---

This appeal involves a husband's objection to the classification, valuation, and distribution of the parties' property made by the trial court as part of the divorce. The parties agreed to and participated in a procedurally unconventional process for submitting the property issues to the court. Each party met separately with the trial court, submitted her and his respective positions regarding the classification and valuation of the parties' property, and submitted proposed distribution plans and other "exhibits" and documentation. After meeting with each party separately in chambers, the trial court ordered the property to be divided according to the wife's proposal. Because neither a transcript nor a statement of the evidence taken by the trial court was filed, we must affirm the trial court's judgment on the very fact-specific issues raised by the husband.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., joined. WILLIAM C. KOCH, JR., J., filed a concurring opinion.

Robert L. Marlow, Shelbyville, Tennessee, for the appellant, Roger Dale Thomas.

Joseph Ward Henry, Jr., Pulaski, Tennessee, for the appellee, Gail C. Thomas.

**OPINION**

The record before us does not include either a transcript of the proceedings or a statement of the evidence pursuant to Rule 24(c), and therefore our ability to review the decision of the trial court on appeal is very limited. However, from the contents of the technical record, we ascertain the following to be the factual background of the dispute and the procedural history leading to this appeal.

## I. Facts and History

The parties were married on April 20, 1972, and have no minor children. They separated in August of 1996, and on July 15, 1997, Husband sued Wife for a divorce based on irreconcilable differences. Wife answered, agreeing there were irreconcilable differences and attaching a Marital Dissolution Agreement that outlined the distribution of all the parties' property.

Wife later repudiated the previously submitted Marital Dissolution Agreement. She re-answered and counter-claimed for divorce from Husband based on inappropriate marital conduct. Shortly thereafter, Husband's attorney withdrew from representation. Wife received a default judgment against Husband that granted a divorce to Wife and divided the marital property in accordance with the proposal she submitted to the court.

Four months later, Wife filed a petition for contempt against Husband for failure to comply with the marital property division as previously ordered by the court. Husband filed a Motion to Vacate and Set Aside Judgment by Default based on the fact that there was no notice given to Husband or his attorney and that the property division was inequitable. The trial court issued an order vacating and setting aside the division of marital property in the final order of divorce. The trial court, however, ordered the absolute divorce granted to the wife to remain in full force. The trial of the matter for the purposes of distribution of the marital estate was set, but was continued upon the agreement of the parties.

During the continuance or on the trial date, the parties apparently entered into an agreement with the trial court for a method of deciding the property distribution issues. They referred to it as a form of alternative dispute resolution or mediation. At this "session," each party submitted a proposed division of marital assets as well as his or her own valuation of those assets. After hearing from each party separately, and considering the exhibits presented by each, the trial court issued a letter to counsel stating that the Wife's proposal was being accepted by the court and that her counsel was to draft an order to that effect.

The trial court issued an order that memorialized the division of the couple's property and directed the parties to comply with the order. Earlier on the same day, Husband filed a Request for Findings of Fact and Conclusions of Law as well as a Motion to Reconsider the Property Division.

No additional documents appear in the technical record until eighteen months later when Wife filed a Motion to Set Husband's Motion to Reconsider and Request for Findings of Fact and Conclusions of Law. The trial court issued two orders denying both of Husband's motions.

Husband appealed presenting the following issues for our review: (1) whether the trial court erred by failing to make findings of fact and conclusions of law even after a request by one of the parties; (2) whether the trial court erred in classifying the real property titled in Wife's sole name as separate property not subject to distribution; and (3) whether the trial court erred in the valuation and distribution of the marital estate with regard to certain specifically enumerated items.

II. The Procedure Used Below

The dispute in this matter is over the classification, valuation and distribution of the parties' property. A trial on those issues had been set. On the trial date,[1] the trial court conducted what is variously called by the parties as a "mediation process," an "alternative dispute resolution session," and a "hearing." The trial court's final order explains the basis for the procedure used:

> The parties entered into a mediation procedure which was agreed to by both parties and their counsel and acknowledged in open Court whereby each party would meet privately in chambers with the Court to offer testimony concerning the distribution of the estate of the parties, present exhibits, and other documentation.

In the trial court's letter to counsel informing them of its holding, the court referred to these appearances as a "mediation hearing." Neither party disputes that the agreement referred to in the trial court's order was made or that this was the procedure agreed to. Husband does not object on appeal to the procedure, merely to the result.

Regardless of the terminology used, the procedure followed by the court at the request or with the agreement of the parties and their counsel was not a mediation nor any other form of alternative dispute resolution recognized by Rule 31 of the Tennessee Supreme Court. The Supreme Court of Tennessee, in the exercise of its responsibility to supervise the administration of justice in our courts, has established "a system of court-annexed alternative dispute resolution methods" whose purpose is to "make the process of dispute resolution more efficient, more economical, and equally fair." Tenn. R. Sup. Ct. 31 pmbl. The procedures comprising this system have been promulgated as Rule 31 of the Rules of the Supreme Court. Rule 31 governs all court-annexed alternative dispute resolution. This court has previously determined that all court-annexed alternative dispute resolution proceedings must be consistent with Rule 31 and that courts have no authority to participate in any other type of dispute resolution process or in any manner inconsistent with Rule 31.[2] *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 540 (Tenn. Ct. App. 2000); *Team Design v. Gottlieb*, No. M1999-00911-COA-R3-CV, 2002 Tenn. App. LEXIS 508 (Tenn. Ct. App. July 18, 2002) (no Tenn. R. App. P. 11 application); *Harris v. Hall*, M2000-00784-COA-R3-CV, 2001 Tenn. App. LEXIS 856 (Tenn. Ct. App. Nov. 28, 2001) (no Tenn. R. App. P. 11 application filed).

The proceedings authorized by Rule 31 include, among others, mediation and judicial settlement conference. Tenn. R. Sup. Ct. 31 § 2. Mediation is "an informal process in which a

---

[1] The "hearing" or "mediation session" was held April 23, 1998, well before revisions to Tenn. R. S. Ct. 31 in 2001.

[2] Amendments to Rule 31, by order filed September 4, 2001, give additional specific authority to trial judges in alternative dispute resolution proceedings and allow some procedures to be developed "by Local Rule, by Standing Order or in consultation with the parties." Tenn. R. Sup. Ct. 31 §§ 20-24 (2001). The cases cited in this opinion, as well as the case before us, involve proceedings occurring prior to the 2001 amendments.

neutral person, called a mediator, conducts discussions among the disputing parties designed to enable them to reach a mutually acceptable agreement among themselves on all or any part of the issues in dispute." Tenn. R. Sup. Ct. 31 § 2(f). A "judicial settlement conference" is "a mediation conducted by a judicial officer other than the judge before whom the case will be tried." Tenn. R. Sup. Ct. 31 § 2(e).[3] As the definitions make clear, a mediation, including one conducted by a judicial officer, is a settlement procedure; its purpose is to help the parties resolve their dispute by agreement, as an alternative to resolution through the well-established procedures governing litigation. Nothing in the definition of mediation or elsewhere in Rule 31 authorizes a mediator, including a judge acting as a mediator, to resolve the dispute by imposing his or her judgment as to the correct resolution. *Team Design*, 2002 Tenn. App. LEXIS 508, at \*19-\*20; *Harris*, 2001 Tenn. App. LEXIS 856, at \*13-\*15. If the parties are unable in mediation to reach an agreeable solution, they retain their rights to have the courts resolve their dispute through litigation.

If, in fact, the parties herein agreed to "mediation" or to some other alternative dispute resolution procedure, they could not give the trial court the authority to resolve the mediation by order rather than agreement of the parties and could not authorize the trial judge before whom the litigation was pending to conduct the mediation. Tenn. R. S. Ct. 31 (1995); *Environmental Abatement*, 27 S.W.3d at 540-41; *Team Design*, 2002 Tenn. App. LEXIS 508, at \*19-\*20; *Harris*, 2001 Tenn. App. LEXIS 856, at \*11-\*13. Consequently, if the order appealed from is the product of a procedure agreed to by the parties as an alternative to litigation, the order must be vacated as beyond the authority of the trial court.

In *King v. King*, M2001-00275-C0A-R3-CV, 2001 Tenn. App. LEXIS 913, at \*11 (Tenn. Ct. App. Dec. 13, 2001) (no Tenn. R. App. P. 11 application filed), this court considered a procedure very similar to the one used herein.[4] We determined that the procedure was not a mediation, but, instead, was "an agreed-upon method of presenting evidence to the trial court." *Id*. at \*10-\*11.

If, in fact, the parties below simply agreed to an alternative method for getting evidence before the trial court upon which the court was to base its ruling, the result of that agreement was a waiver of the right to present additional relevant testimony through other witnesses with knowledge of the facts, the right to be present when the other party testified, and the right to cross-examination, all of which are waivable. Although the trial court apparently authorized court reporters to be present at the separate presentation of each party, neither party took advantage of this offer. The combination of this decision and the waiver of the right to be present during the other party's testimony resulted in neither party knowing the details of the other's testimony, even after-the fact, and the subsequent inability to preserve that testimony for appellate review either through a transcript or a statement of the evidence.

---

[3]The 2001 amendments to Rule 31 provide, "without the consent of the parties, no judge presiding over a matter may preside over a Judicial Settlement Conference respecting that matter." Tenn. R. S. Ct. 31 § 20 (2001).

[4]The *King* case involved the same trial court and at least one of the same attorneys as the case before us.

The pivotal question, then, is whether the parties, through counsel, agreed: (1) to a "mediation" process with the expectation that agreement of the parties was necessary to resolution; or (2) to an unusual method of presenting evidence, while still operating in the litigation model, with the expectation the court would resolve the dispute based upon the evidence presented in this unusual procedure.

The record does not include a formal written agreement or agreed order outlining the specifics of the parties' agreement.[5] The trial court's final order sets out all we know about the agreement. That order is silent on the question of whether the parties agreed to resolution by agreement through mediation or whether they agreed that the court would resolve their dispute, but certain alterations in presentation of evidence would be made. However, the language used by the trial court suggests that the parties, through their counsel, were aware that the separate hearings with the trial court were "to offer testimony . . . present exhibits, and other documentation."

Most determinative, however, is the fact that neither party has objected, at the trial level or on appeal, to the procedure used. Neither has claimed that the procedure as described in the trial court's final order was not what he or she agreed to; neither has claimed a different understanding of the procedure he or she agreed to follow. Husband has not claimed that he thought the procedure was a true mediation, which would resolve the dispute only if the parties reached agreement. Therefore, we must conclude that the procedure used below was simply an unusual or alternative method for presenting evidence to the trial court, entered into by informed agreement.

III. Distribution of Property Upon Divorce

In this appeal, Husband asserts that the trial court improperly classified as Wife's separate property a specified parcel of real estate and her interest in real property owned jointly with a third party. In addition, Husband objects to the trial court's valuation of specific items of marital property, and also asserts that the division of property was inequitable.

Upon the dissolution of a marriage, courts are called upon to divide the assets the parties accumulated during the marriage. Such decisions are very fact-specific, and many circumstances surrounding the property, the parties, and the marriage itself play a role. The task involves several steps, the first being to determine whether an asset is subject to division at all.

Tennessee, being a "dual property" state, recognizes two distinct classes of property: "marital property"and "separate property." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The distinction is important because, in an action for divorce, only marital property is divided between the parties. Tenn. Code Ann. § 36-4-121(a)(1); *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). Separate property is not part of the marital estate subject to division.

---

[5]Wife's brief states that the parties and their counsel signed an agreed order, which was then entered by the court, outlining the procedure. The appellate record does not include that order.

*Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Accordingly, when it comes to dividing a divorcing couple's property, the court should initially identify the separate property, if any, belonging to each party. *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998).

The general rules for determining whether property is separate or marital are found in statute. Tenn. Code Ann. §§ 36-4-121(b)(1) and -121(b)(2). Of course, the courts must apply these rules to the specific facts of each case. In addition, conduct between the parties can affect the classification of the property, and certain conduct can create presumptions as to separate or joint ownership. *See, e.g.*, *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995); *McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App. 1993); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. Ct. App. 1991); *Batson*, 769 S.W.2d at 858. Any such presumption, however, can be rebutted with evidence of circumstances or communications clearly indicating an intent contrary to the presumption. *See McClellan*, 873 S.W.2d at 351; *Batson*, 769 S.W.2d at 858.

Therefore, the determination of whether property is jointly or separately held depends upon the circumstances. *Langford v. Langford*, 421 S.W.2d 632, 634 (Tenn. 1967). Whether an asset is separate property or marital property is a question of fact. *Cutsinger*, 917 S.W.2d at 241; *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992). Thus, a trial court's classification decisions are entitled to great weight on appeal. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). These decisions will be presumed to be correct unless the evidence preponderates otherwise, *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983), or unless they are based on an error of law. *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989).

After classification of the parties' property as either marital or separate, the trial court is charged with equitably dividing, distributing, or assigning the marital property in "proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). The court is to consider several factors in its distribution. Tenn. Code Ann. § 36-4-121(c) (listing the factors to be considered). The court may consider any other factors necessary in determining the equities between the parties, Tenn. Code Ann. § 36-4-121(c)(11), except that division of the marital property is to be made without regard to marital fault. Tenn. Code Ann. § 36-4-121(a)(1).

The court's distribution of property "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859. An equitable distribution is not necessarily an equal one. *Word v. Word,* 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996). Thus, a division is not rendered inequitable simply because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Similarly, equity does not require that each party receive a share of every piece of marital property. *King v. King,* 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

The trial court's goal in a divorce case is to divide the marital property in an essentially equitable manner, and equity in such cases is dependent on the facts of each case. The fairness of

a particular division of property between two divorcing parties is judged upon its final results. *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). Because dividing a marital estate is a process guided by considering all relevant factors, including those listed in Tenn. Code Ann. § 36-4-121(c), in light of the facts of a particular case, a trial court has a great deal of discretion concerning the manner in which it divides marital property. *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987). Appellate courts ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence. *Wilson*, 929 S.W.2d at 372; *Brown*, 913 S.W.2d at 168.

As part of its responsibility to divide the martial estate equitably, the trial court must determine the value of the property included. The value to be placed on an asset is a question of fact. *Kinard*, 986 S.W.2d at 231. Parties and their witnesses often do not agree on the value of specific items in the marital estate, and, in that situation, trial courts may place a value on the property that is within the range of the values presented by the evidence. *Wallace*, 733 S.W.2d at 107. Appellate courts review valuation findings as other findings of fact, and a trial court's determination of value will be upheld unless the evidence preponderates against it. Tenn. R. App. P. 13(d).

### IV. Standard of Review Without Evidentiary Record

As set out above, every issue raised by Husband is fact-dependent. In essence, he asks us to find the evidence preponderated against the trial court's finding. However, the record before us is very limited. The technical record includes a designation of separate property and a proposal for distribution of marital property for each party, with attachments, which apparently were presented to the trial court as part of each party's testimony. We have no record of any testimony explaining the filings or establishing other facts relevant to a court's distribution of assets upon divorce. Where the issue on appeal is one of fact, this court must be presented with a record that allows us to make the review necessary under Tenn. R. App. P. 13. Because our jurisdiction is appellate only, our review power is limited to those factual and legal issues for which an adequate legal record has been preserved. Tenn. R. App. P. 13(c); *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976).

It is the duty of the appellant to prepare an adequate record in order to allow meaningful review on appeal. Tenn. R. App. P. 24(b); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). Allegations contained in pleadings are not evidence. *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Recitations of the facts contained in a brief, or arguments of counsel, also are not evidence. *Id.*

When a trial court decides a case without a jury, its findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d). Where factual issues are raised, without an appellate record containing the facts, this court cannot perform a *de novo* review or determine the preponderance of the evidence. *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). Therefore, in such cases, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual

findings. *Id.*, *McDonald*, 772 S.W.2d at 914; *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn. Ct. App. 1988); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1987).

The issues raised by Husband involve the weight, sufficiency and preponderance of the evidence underlying the trial court's findings. We must conclusively presume that there was sufficient evidence to support the trial court's findings. *Coakley v. Daniel*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992). Accordingly, we must affirm the judgment of the trial court.

V. Request for Findings of Fact and Conclusions of Law

On appeal, Husband asserts that the trial court erred by not providing, upon his request, Findings of Fact and Conclusions of Law. Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> In all actions tried upon the facts without a jury, and upon request made by any party prior to the entry of judgment, the court shall find the facts specially and shall state separately its conclusions of law thereon.

Husband requested more specific findings hours before the trial court entered judgment.[6]

The trial court's Final Order incorporated the Wife's proposed property division. By doing so, the trial court made findings of fact with regard to the identification, value, classification and distribution of the property. Husband wants us to require the trial court to explain the reasons it chose Wife's valuation over his in various instances and why the court decided that some property was separate rather than marital. We are not convinced that the court must justify its factual determinations in response to a request for findings of fact.

In any event, we cannot say that more specific findings would have any effect on our decision because of the record presented to us on fact-specific issues. We have no evidentiary basis to determine: (1) whether the evidence preponderates against the court's valuation of any specific asset; (2) whether the trial court misclassified any particular asset; or (3) whether the ultimate division was equitable. In this situation, we cannot say that the degree of specificity of the trial court's factual

---

[6]According to the trial court's order overruling or denying the Motion for Findings of Fact and Conclusions of Law,

> Plaintiff [Husband] was given until October 10, 1999, to submit proposed findings of fact and conclusions of law and none were submitted. No further communication with the Plaintiff [Husband] concerning this issue was had until the filing of the Motion to Set filed by Defendant [Wife] on January 25, 2001.

No order granting this opportunity appears in the record before us. However, Husband does not deny he was given the opportunity to submit proposed findings and conclusions, but instead argues that it is inappropriate for a trial court to shift this duty to a party.

findings has any effect on the outcome of the appeal. Consequently, the judgment would not be set aside even if we found the trial court should have made additional or more specific findings. Tenn. R. App. P. 36(b).

## VI. Conclusion

In conclusion, the decision of the trial court is affirmed. Costs of the appeal are assessed to Roger Dale Thomas, for which execution may issue if necessary, and the case is remanded to the trial court for any further proceedings which may be necessary and are consistent with this opinion.

_____
PATRICIA J. COTTRELL, JUDGE